PETER MOROSINI *vs.* MANUEL G. DAVIS.

DOMINIC MOROSINI *vs.* MANUEL G. DAVIS.

MORRIS MOROSINI *vs.* MANUEL G. DAVIS ET AL.

*Third Judicial District, Bridgeport, October Term, 1929.

WHEELER, C. J., MALTBIE, HAINES, HINMAN and BANKS, Js.

Argued October 22d, 1929—decided January 6th, 1930.

*Transferred from the Second Judicial District.

*Ralph O. Wells,* for the appellant (defendant Manuel G. Davis.

*Benjamin H. Hewitt,* for the appellees (plaintiffs).

HAINES, J. One of the original defendants was dropped in each of these three cases leaving Manuel G. Davis the sole defendant.

All of the cases rest upon the same essential facts and were tried together, judgment in each case being for the plaintiff, and the defendant appealed. It was agreed by counsel and ordered by the trial court that a single record be made for all the appeals. We accordingly consider the case of Morris Morosini v. Manuel G. Davis as representative of all. The plaintiffs offered evidence to prove and claimed to have proved that Morris Morosini was the owner of an automobile which was being driven northerly in Greenmanville Avenue, in Mystic, by his father Dominic Morosini; that Dominic was not a licensed operator, but was accompanied by and receiving instruction in driving from another son, Peter, who was a licensed operator and was sitting beside the driver on the front seat; that both Dominic and Peter were in the exercise of due care; that the avenue was straight and there were no intersecting highways at the right as they approached a garage which was located on that side of the avenue; that an agent of the defendant

negligently drove the defendant's car out of a private way which led from the garage to the avenue directly into the path of the plaintiff's automobile and crashed into the right front wheel of the plaintiff's car, throwing it out of its course and into a tree, and injuring the plaintiff's car and both of its occupants.

The defendant claimed to have proved that when his agent undertook to come out of the garage with the car of the defendant, there were two cars in front of the garage which completely obstructed the view of the defendant's driver along the avenue to the south; that when the defendant's car emerged from the private way and turned south in order to proceed southerly on the avenue, the car was going slowly in first gear, and the driver proceeding with great caution because his view was obstructed; that when the driver of the defendant's car was thus carefully entering the avenue, the plaintiff's car came north at about thirty-five miles per hour; that the occupants of the plaintiff's car had an opportunity to see the front end of the defendant's car thus moving slowly into the avenue before the driver of the defendant's car could see the plaintiff's car; that the driver of the plaintiff's car did not blow his horn or slacken his speed or take any precautions in view of the danger incident to the situation, but, at the speed indicated, he came into contact with the front right-hand corner of the defendant's car. The defendant also claimed to have proved that Dominic, the father, was the real owner of the car and that he had driven it on various occasions since its purchase the preceding July, some seven or eight hundred miles, and was not, at the time of the accident, driving under instruction of his son Peter; that Peter had only been a licensed driver for two days and was not competent to act as instructor.

The appellant-defendant claims that the court erred

in the charge in three respects: as to the respective
rights and duties of the drivers of the cars under the
circumstances, as to contributory negligence, and as
to an unlicensed driver under instruction.

Upon the first feature, the court referred to the
fact that the defendant's driver was coming from a
private way onto the avenue and cited that portion
of the statute which reads "no operator or driver en-
tering upon a public highway from a private way shall
have the right of way" (Public Acts of 1923, Chap.
246, § 1), and then instructed the jury that "as matter
of law the operator of the defendant's automobile
could not have a right of way over an automobile
driving in the street." The court then told the jury
that in such a case it would be the duty of the opera-
tor of the car coming out of the private way to exercise
due care to give the vehicle coming on the main high-
way, a fair and reasonable opportunity to pass. It
added that if the jury found that the operator of the
defendant's car in this case came out of the private
way and attempted to assume the right of way in dis-
regard of the statute, and his doing so was the proxi-
mate cause of the injury, provided the operator of the
other car was in the exercise of reasonable care, the
defendant was guilty of actionable negligence, and
their verdict would be for the plaintiff.

The defendant's claim is that the position of the
above quoted portion of the statute in the Act of 1923
is such, that the prohibition is not an absolute one but
merely an exception to the rule elsewhere obtaining
that the car on the right at an intersection has the
right of way if the two cars arrive at approximately
the same time.

We cannot concur in this interpretation. An exami-
nation of § 1 of the Act shows that it contains numer-
ous and detached provisions composing what is known

as the "law of the road." The quoted provision is in a sentence by itself and there is nothing to indicate that it has any reference to the preceding sentence, which relates to the rights of drivers at intersections of public streets or highways. There is little similarity in the conditions or the purpose sought by the two provisions. If the quotation was intended to be read in connection with the preceding sentence, we would expect to find, not a detached rule of the road, but a proviso, condition or exception attached to the preceding provision. We think the two provisions are separate and distinct.

The defendant insists that the charge as given stated, in effect, that the defendant could only enter the avenue from the private way "at his peril and had no rights as against one operating a car along that highway." We do not consider the charge reasonably susceptible to such interpretation. As we have indicated, the fact that the defendant's car was coming from the right did not give it the right of way. The granting or withholding of a right of way by statutory provision, is a rule of safety adopted with the purpose of preventing collisions at street intersections. It is only when there is danger of such collision that the question of right of way becomes of importance. The legislature has seen fit to give drivers upon public highways a priority of right over those coming onto that highway from a private way where there is danger of collision. If that danger does not exist the rule has no significance. The rule is a reasonable one and based upon the well-known fact that private ways are ordinarily traveled at comparatively slow speeds and only by a comparatively few of the traveling public, and at the same time are often more or less concealed from the view of approaching travelers upon the public highway. It is only just, therefore, that users of a

private way should conform in letter and spirit to the provision which gives the traveler on the public highway the right of way where there is danger of a collision.

The court correctly charged the jury that if they found the facts to be as claimed by the plaintiff, there was no right on the part of the defendant's driver to come out onto the avenue and expect the plaintiff's driver to give way, but he should, on the contrary, give the latter a fair and reasonable opportunity to pass, and that the driver of the defendant's car could not come out onto the highway and attempt to assume the right of way over the plaintiff's car. It is of course true that, under these as under all circumstances, it is the duty of each driver to use reasonable care to avoid a collision, and though he may have the right of way by statute no driver is justified in enforcing that right if he has reason to suppose that in doing so he will incur the danger of a collision. *Jackson* v. *Brown,* 106 Conn. 143, 137 Atl. 725.

As to contributory negligence, the charge was correct in law and we think was so stated, and must have been so understood by the jury, that they could have had no difficulty in making application of it to the evidence before them. It must be admitted that the charge on this feature of the case would have been greatly improved by some further comments upon the evidence and its application to such findings as they might make of the facts and a charge is sometimes insufficient for failing to do so. *Albonsky* v. *Banaitis,* 106 Conn. 205, 206, 137 Atl. 740; *Laukaitis* v. *Klikna,* 104 Conn. 355, 360, 132 Atl. 913; *Greenberg* v. *Branciere,* 100 Conn. 590, 600, 124 Atl. 216; *Pietrycka* v. *Simolan,* 98 Conn. 490, 494-496, 120 Atl. 310. The extent to which the court shall comment on the evidence is largely a matter within its sound dis-

cretion. *Gett* v. *Isaacson*, 98 Conn. 539, 540, 120 Atl. 156; *Salemme* v. *Mulloy*, 99 Conn. 474, 482, 121 Atl. 870. Where the facts of a case are peculiar or capable of differing conclusions, or complicated or uncertain, the need of comment by the court is greater than where they are within a narrow compass, simple and uncomplicated as in this case. See *Albonsky* v. *Banaitis*, 106 Conn. 205, 206, 137 Atl. 740, and *Murphy* v. *Linskey*, 94 Conn. 475, 109 Atl. 412. Under the circumstances, the present charge, although general in its character, was nevertheless correct and sufficiently specific in its reference to the evidence to give the defendant the benefit of all claims he could properly make as to the facts established.

The defendant strongly urges that the charge as to an unlicensed driver was insufficient. The plaintiff's evidence was that while Dominic was an unlicensed driver, he had, for two weeks, been receiving instruction from licensed drivers, and at the time in question was "under the instruction of Peter Morosini, a duly licensed driver, who was sitting beside him in said car." The defendant's evidence was that Dominic had driven this car on various occasions substantially since its purchase the preceding July, and particularly in the late summer and fall; that he had never applied for or received a license, but claimed to have driven the car some seven or eight hundred miles before the accident, and that, although he was accompanied by his son Peter, he was not at this time receiving instruction from him within the meaning of the statute. The statute in question reads as follows: "No person shall operate a motor vehicle upon any highway of this State until he shall have obtained from the commissioner a license for such purpose, provided any person over sixteen years of age who has not been refused and who has not had his motor vehicle operator's

license suspended or revoked, may, for a period not exceeding thirty days, operate a motor vehicle while under the instructions of, and accompanied by, a licensed operator, who shall have full control of the motor vehicle as provided by law." Public Acts of 1927, Chap. 69, § 1.

Under this state of the law and the evidence, the court confined its charge upon this point to a reading of the statute and a statement of the plaintiff's claim that, although Dominic was not licensed, he was accompanied by Peter, who was on the seat with him, who was himself a licensed operator, and "that the father was operating and being instructed by his son at this time, and that the father comes within all the provisions of this section, . . . that is, he never had been refused a license—never applied for a license—nor had a license suspended or revoked, and that he had not been operating more than thirty days, and was operating then and there at that time under the instructions of his son . . . sitting in the front seat, and having full control of the motor vehicle; and he claims, therefore, that he comes within that exception which permitted him to operate under the instructions of his son. You have heard the evidence and it is for you to determine. If you find established by a fair preponderance of the evidence that he was so operating, that he was operating within the provisions of that statute that I have read and explained to you, why then, of course, you would find that he was legally operating the car, and that it was being operated by a person legally operating at that time. If you do not so find established by the evidence why, of course, you cannot find in favor of the plaintiffs."

This charge omitted any explanation to the jury of the meaning of "instruction" as that word is used in the statute. In *Blanos* v. *Kulesva*, 107 Conn. 476,

480, 481, 141 Atl. 106, we held that "instruction" as so used, meant teaching or information given for the purpose of qualifying the recipient to become a licensed operator, and did not comprehend advice or information as to methods of operation given to one who was already a competent or experienced driver. In that case the trial court read the statutory provisions to the jury, defined the word "instruct" as it is defined in the dictionary, and added that as used in the statute it meant "the act of instructing or teaching the person how to operate the motor vehicle." We held that charge insufficient and said that "the purpose of receiving instruction is that one may learn, and the intent of the legislature . . . was clearly to limit this class of operators to those who were learning to drive for the purpose of qualifying themselves to become licensed operators. This would effectuate the underlying purpose of the legislation requiring the licensing of operators of motor vehicles which is, in the interest of public safety, that so far as practicable no motor vehicle shall be operated upon the highways of the State except by a licensed, and therefore presumably experienced, operator. Since this cause of action arose the legislature has further emphasized this intent by limiting the period of instruction to thirty days. . . . It is apparent . . . that the jury required for its guidance something more than a reading of the statute and a definition of the word 'instruction.' They should have been told that the purpose of the statute was to provide a method by which one could learn to drive and that the permission to operate without a license was confined to those persons who were actually receiving instruction for the purpose of acquiring sufficient skill to qualify as licensed operators."

It is manifest that the charge in the present case

fell short of meeting this requirement. The jury had evidence before it that Dominic had driven this car seven or eight hundred miles and had been driving at different times since the preceding July, six months before, and was therefore a more or less experienced driver. The court said in the charge: "I understand the testimony to be, of Morris himself, that he permitted his father to use it any time he wanted to, and he kept it for that purpose." On the charge as given, they could well have thought that as Dominic was accompanied by a licensed operator in a position to give advice or information to him as to methods of handling the car, he was therefore "under instruction" within the meaning of this statute, even though he had had considerable experience and knew very well how to operate the car. We cannot avoid the conclusion that there was inadequate instruction upon this feature of the case which may have seriously prejudiced the rights of the defendant, and that this constituted reversible error. *Albonsky* v. *Banaitis,* 106 Conn. 205, 206, 137 Atl. 740.

There is error and a new trial is ordered.

In this opinion the other judges concurred.