## STATE OF CONNECTICUT *v.* MOISES AVILA
## (14252)

PETERS, C. J., CALLAHAN, GLASS, COVELLO and BERDON, Js.

Argued March 31—decision released August 12, 1992

*Temmy Ann Pieszak,* assistant public defender, with whom, on the brief, was *G. Douglas Nash,* public defender, for the appellant (defendant).

*James M. Ralls,* assistant state's attorney, with whom, on the brief, were *John A. Connelly,* state's attorney, and *Bradford Ward* and *Marcia Smith,* senior assistant state's attorneys, for the appellee (state).

CALLAHAN, J. This appeal of a criminal conviction raises several claims regarding the propriety of the trial court's jury instructions. The defendant, Moises Avila, was tried for the crimes of felony murder and robbery in the first degree in violation of General Statutes §§ 53a-54c, 53a-133 and 53a-134 (a) (2).[1] The state pur-

---

[1] General Statutes § 53a-54c provides: "A person is guilty of murder when, acting either alone or with one or more persons, he commits or attempts to commit robbery, burglary, kidnapping, sexual assault in the first degree, sexual assault in the first degree with a firearm, sexual assault in the third degree, sexual assault in the third degree with a firearm, escape in the first degree, or escape in the second degree and, in the course of and in furtherance of such crime or of flight therefrom, he, or another participant, if any, causes the death of a person other than one of the participants, except that in any prosecution under this section, in which the defendant was not the only participant in the underlying crime, it shall be an affirmative defense that the defendant: (A) Did not commit the homicidal act or in any way solicit, request, command, importune, cause or aid the commission thereof; and (B) was not armed with a deadly weapon, or any dangerous instrument; and (C) had no reasonable ground to believe that any other participant was armed with such a weapon or instrument; and (D) had no reasonable ground to believe that any other participant intended to engage in conduct likely to result in death or serious physical injury."

General Statutes § 53a-133 provides: "A person commits robbery when, in the course of committing a larceny, he uses or threatens the immediate use of physical force upon another person for the purpose of: (1) Preventing or overcoming resistance to the taking of the property or to the retention thereof immediately after the taking; or (2) compelling the owner of such property or another person to deliver up the property or to engage in other conduct which aids in the commission of the larceny."

General Statutes § 53a-134 (a) provides in pertinent part: "A person is guilty of robbery in the first degree when, in the course of the commission of the crime or of immediate flight therefrom, he or another participant in the crime . . . (2) is armed with a deadly weapon."

sued a theory of accessorial liability regarding both offenses pursuant to General Statutes § 53a-8.[2] Although the defendant was acquitted of the felony murder charge, he was convicted of robbery in the first degree and sentenced to a term of imprisonment of eighteen years, execution suspended after thirteen years, with five years probation. Thereafter, he appealed to the Appellate Court, and this court transferred the case to itself pursuant to Practice Book § 4023 and General Statutes § 51-199 (c). We affirm the judgment of the trial court.

The jury could reasonably have found the following facts. On October 8, 1988, the defendant drove John Hoffler, Rodney Kyles and Nathaniel Nelson from New Haven to Waterbury.[3] Nelson was armed with a shotgun and Kyles was carrying a .38 caliber handgun in his belt. Jamele Gregg, armed with a .32 pistol, joined the group in Waterbury. The defendant then drove around Waterbury while his passengers looked for a place to rob. Each time a likely location was approached, the defendant would slow the car so that the area could be reconnoitered. The men considered robbing several different places, but decided against all of them for various reasons. Finally, however, the defendant parked the car near a private social club on Walnut Street. His passengers entered the club while he waited in the car with the motor running.

---

[2] General Statutes § 53a-8 provides: "A person, acting with the mental state required for commission of an offense, who solicits, requests, commands, importunes or intentionally aids another person to engage in conduct which constitutes an offense shall be criminally liable for such conduct and may be prosecuted and punished as if he were the principal offender."

[3] As a result of this incident, Kyles was convicted of felony murder and robbery in the first degree. He appealed to this court and we affirmed his conviction. *State* v. *Kyles,* 221 Conn. 643, 607 A.2d 355 (1992). Nelson pleaded nolo contendere to a charge of felony murder. We affirmed his conviction, as well. *State* v. *Nelson,* 221 Conn. 635, 605 A.2d 1381 (1992).

Upon entering the club, the four men displayed their weapons, ordered the patrons to leave their money on the table and to put their heads down between their knees. Nelson attempted to take a wallet from Thompson Lynn, a patron of the club, but Lynn refused to surrender it. Nelson then struck him on the head with his shotgun. As the robbery progressed, Robert "Butch" Clark emerged from a bathroom and attempted to leave the club. Kyles stopped him, however, and a struggle ensued, during which Kyles shot Clark three times in the chest, killing him. The men then left the club, taking the money they had collected. The defendant, who was waiting nearby in the car, picked them up and sped from the scene of the robbery.

On appeal, the defendant claims that the trial court: (1) failed to answer adequately a question asked by the jury regarding an essential element of robbery in the first degree; (2) improperly instructed the jury on the definition of intentional conduct; and (3) improperly instructed the jury on the intent required to commit the offense of robbery in the first degree as an accessory.

## I

The defendant first claims that the trial court inadequately answered a question asked by the jury during deliberations. He argues that, when the jury asked whether the defendant would be guilty as an accessory if he were unaware that a robbery had taken place until after it had occurred, the trial court should have responded directly that the defendant would not be guilty unless he had intended that a robbery occur prior to its actual commission.[4] The trial court did not do so. Because the jury's question directly concerned an

---

[4] The state contests this assertion and contends that the defendant would be guilty of robbery in the first degree as an accessory even if he became aware of the robbery only after the principals had left the gambling club.

essential element of the offense of robbery in the first degree, the defendant claims that he is entitled to a new trial. We are not persuaded.

In its final instructions, the trial court informed the jury of the elements of robbery in the first degree. The court also informed the jury that the state was proceeding on the theory that the defendant was an accessory to the crime, rather than a principal. Regarding accessorial liability, the court instructed the jury that, in order to prove the defendant guilty, the state had to demonstrate that the defendant had possessed the mental state required for the commission of robbery and that he had intentionally aided the principal offenders to commit that crime.[5] The court further explained that the state would have to prove that the defendant had (1) intended that a robbery be committed; (2) intended to assist the principals in its commission; and (3) possessed both of these intentions at the time that he drove the principals *to and from* the scene of the crime.[6]

On October 5, 1990, the second day of jury deliberations, the jury presented the court with a note asking: "Question: Would the accused be an accomplice if he were aware of any criminal act(s) *only* if he were made

---

[5] The court instructed: "[A] person acting with the mental state required for the commission of an offense, who intentionally aids another person to engage in conduct which constitutes an offense, shall be criminally liable for such conduct . . . ." Additionally, "[t]o be an accessory to a crime, a person must be more than simply present as a companion when the crime was committed. The person must do more than passively acquiesce in the crime or innocently do certain acts that aided in the commission of the crime. Unless the defendant had a criminality of interest and unlawful purpose, in common with the actual perpetrators of the robbery, he cannot be held to have been an accessory."

[6] The court instructed the jury that the state must prove beyond a reasonable doubt that the defendant had the intent "that a robbery be committed and that *acting with such intent,* the defendant intentionally aided [others] in their commission of the robbery by driving them *to and from* the place where the robbery occurred." (Emphasis added.)

aware immediately after said acts were performed, and participated in the escape of the parties involved in the criminal acts?'' (Emphasis in original.)

On October 9, 1990, the court responded to the jury's question stating, ''my answer to you is that I have informed you what the state has to prove beyond a reasonable doubt for you to find that the defendant was an accessory to the crime, the crime of robbery. If I receive—And, therefore, that is my answer to your question. If I receive a request from you to request or redefine my instructions, insofar as they relate to what the state has to prove for you to find that Mr. Avila is an accessory to the crime, [I] will. . . . So, if you want me to give you further instructions as to what an accessory is, I shall be very happy to do so. But, I need a note from you to do it.''

On the following day, the jury requested the court to redefine the elements of felony murder and robbery in the first degree. In response, the court stated that it would ''get to the heart of the matter which seems to be bothering you and that is whether the defendant is a participant in the robbery.'' The trial court then proceeded to reinstruct the jury on the elements of robbery in the first degree and felony murder. Regarding the defendant's intent, the court again informed the jury that, in order to find the defendant guilty, it would be required to find that the defendant (1) had intended to commit a robbery; (2) had intended to aid the principals in their commission of a robbery; and (3) acting with both of those intentions, had driven the principals *''to and from''* the scene of the crime. (Emphasis added.)

On October 11, 1990, the jury again asked the court what must be proven in order to find the defendant guilty of robbery in the first degree. In response, the court reinstructed the jury regarding the elements of

robbery. Again, the court explained that the defendant would not be guilty of robbery in the first degree unless the jury found that he had had the intent that a robbery be committed and, acting with that intention, had intentionally aided the principals by driving them *"to and from"* the scene of the crime. (Emphasis added.)

Immediately following the trial court's reinstruction, the defendant took exception, stating, "I don't know whether the jury knows that there is a dual intent required." In response, the trial court called the jury back into the courtroom and, once more, reinstructed it. The court repeated that the state was required to prove that the defendant (1) had intended that a robbery be committed; (2) acting with that intent, had intentionally aided the principals; and (3) acting with both of those intentions, had driven the principals *"to and from"* the scene of the robbery.[7] (Emphasis added.)

Although the trial court repeatedly instructed the jury regarding the elements of the charged offenses, it never specifically supplied the jury with a direct answer to its question of October 5, 1990. The gravamen of the defendant's claim on appeal is that, in failing to respond to that question directly, the court failed to clarify the elements of the offense, and left the jury in doubt as to whether the defendant could be guilty of robbery if he had become aware of the robbery only after it had been committed.

Initially, the state claims that the defendant failed to preserve this claim properly at trial. Our review of the trial transcript also indicates that the defendant did not properly preserve this issue. See Practice Book §§ 288 and 4185; *State* v. *Tillman,* 220 Conn. 487, 506,

---

[7] Following this last reinstruction, the state took exception, asserting that the court's repeated instructions regarding the intent required had "unduly" emphasized that element of the offense.

600 A.2d 738 (1991), cert. denied,    U.S.    , 112 S. Ct. 3000, 120 L. Ed. 2d 876 (1992). Alternatively, the defendant asserts that he has raised a constitutional issue and should prevail pursuant to *State* v. *Golding,* 213 Conn. 233, 239–40, 567 A.2d 823 (1989). In order to prevail on appeal on an unpreserved constitutional claim, the defendant must satisfy all of the following conditions: "(1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." Id.

It is uncontroverted that the defendant has established both that the record is adequate to review his claim and that his claim alleges the violation of a fundamental right. He has thus satisfied the first and second prongs of the *Golding* test; consequently, we must determine whether a constitutional violation clearly exists and, if so, whether it clearly deprived the defendant of a fair trial.[8] We conclude that the defendant has failed to establish a clear constitutional violation.

A jury instruction is constitutionally adequate if it provides the jurors with a "clear understanding of the elements of the crime charged," and affords "them proper guidance for their determination of whether those elements were present." (Internal quotation marks omitted.) *State* v. *Usry,* 205 Conn. 298, 316, 533

---

[8] In its brief, the state asserts that the defendant is not entitled to a review of his claim pursuant to *State* v. *Golding,* 213 Conn. 233, 567 A.2d 823 (1989), because, the state contends, he has "expressly disavowed" any claim by misleading the trial court into believing that he approved of its instructions. Even assuming, without deciding, that a defendant's disavowal could preclude him from prevailing under *State* v. *Golding,* our review of the record does not reveal any express disavowal of this claim. We conclude that the defendant is not barred from requesting review pursuant to *State* v. *Golding.*

A.2d 212 (1987); *State* v. *Sinclair,* 197 Conn. 574, 581, 500 A.2d 539 (1985); see *State* v. *Wood,* 208 Conn. 125, 132, 545 A.2d 1026, cert. denied, 488 U.S. 895, 109 S. Ct. 235, 102 L. Ed. 2d 225 (1988). An instruction that fails to satisfy these requirements would violate the defendant's right to due process of law as guaranteed by the fourteenth amendment to the United States constitution and article first, § 8, of the Connecticut constitution. *State* v. *Anderson,* 212 Conn. 31, 36, 561 A.2d 897 (1989); *State* v. *Foster,* 202 Conn. 520, 537, 522 A.2d 277 (1987); *State* v. *Fleming,* 198 Conn. 255, 269–70, 502 A.2d 886, cert. denied, 475 U.S. 1143, 106 S. Ct. 1797, 90 L. Ed. 2d 342 (1986).

The defendant correctly asserts that he would not be liable as an accessory to robbery in the first degree if he were completely unaware that a robbery had been committed until after the principals had left the scene and entered his car. Although, in those circumstances, the defendant's conduct might have assisted the principals in escaping, it would be insufficient to establish accessorial liability pursuant to General Statutes § 53a-8 because the conduct would not satisfy the required element of intent.

To act as an accessory pursuant to § 53a-8, one must act "with the mental state required for the commission of the offense . . . ." The mental state required to commit robbery in the first degree is the intent to commit larceny and to do so by the use of force or the threatened use of immediate force for the purpose of: (1) preventing or overcoming resistance to the taking of property or to the retention thereof immediately after the taking; or (2) compelling the owner of such property or another person to deliver up the property or to engage in other conduct that aids in the commission of the larceny. General Statutes § 53a-133. More-

over, for conduct to be intentional, it must be one's conscious objective to cause the result or to engage in such conduct. General Statutes § 53a-3 (11).

Thus, if the defendant was unaware of the robbery until after it had occurred, and offered assistance to the principals only at that time, it would have been impossible for him to have assisted with the intent that the crime occur. Although, in those circumstances, a jury might reasonably conclude that the defendant assisted the principals with the knowledge that a robbery had occurred, it could not reasonably conclude that he had assisted the principals with the conscious objective to bring about a result that had already been achieved.[9] In *State* v. *Grant,* 219 Conn. 596, 594 A.2d 459 (1991), we similarly held that the defendant, who drove the murderer to and from the scene of the killing, could reasonably have been found guilty because there was sufficient evidence to demonstrate that he intended that the victim be killed *prior to the commission of the crime.*

Although we agree with the defendant's contention that he could not be convicted of robbery in the first degree as an accessory if the jury found that he had become aware of the crime only after it had been committed, we conclude that the trial court's instructions sufficiently communicated to the jury the necessity that the defendant have the prior intention to commit robbery. Although the trial court might more properly have answered the jury's question directly, its omission was not so egregious as to violate due process. The court repeatedly delivered accurate instructions regarding the intent required to commit the crime, and the required timing of that intent. The court repeatedly informed the jury that, in order to convict, it must find

---

[9] Under such circumstances, the defendant might be prosecuted for the crime of hindering prosecution pursuant to General Statutes §§ 53a-165 and 53a-166.

that the defendant had intended to commit the crime of robbery and had intended to assist the principals in committing robbery at the time that he drove the principals *to* the scene of the crime as well as away from it. Accordingly, we conclude that the jury was provided with a "clear understanding of the elements of the crime charged," and afforded "proper guidance for their determination of whether those elements were present." (Internal quotation marks omitted.) *State* v. *Usry,* supra, 316. The defendant may not prevail on this claim because he has failed to establish a clear constitutional violation as required by the third prong of the test set forth in *State* v. *Golding,* supra.

## II

We next address the defendant's claim that the trial court improperly instructed the jury on the definition of intentional conduct. Specifically, the defendant asserts that his conviction must be reversed because the trial court failed to distinguish adequately between knowing and purposeful conduct. We disagree.

In its final instructions, the trial court accurately informed the jury that in order to be guilty of robbery in the first degree the defendant must have committed certain intentional acts. The court also explained that "[o]ur law provides that a person acts intentionally with respect to a result or to conduct described by a statute defining an offense when his or her conscious objective is to cause such result or to engage in such conduct. In short, intentional conduct is purposeful conduct, as distinguished from conduct that is accidental or inadvertent."[10] Later in the instructions, the court stated,

[10] General Statutes § 53a-3 (11) provides: "A person acts 'intentionally' with respect to a result or to conduct described by a statute defining an offense when his conscious objective is to cause such result or to engage in such conduct."

"Previously, I defined intentional conduct for you as purposeful conduct, as distinguished from conduct that was accidental or inadvertent."

The defendant now claims that, by contrasting purposeful conduct with accidental conduct, the trial court might have misled the jury to believe that knowing acts were sufficient to satisfy the definition of intentional conduct.[11] The defendant asserts that knowing acts, like intentional acts, are distinguished from accidental acts. He claims, therefore, that the court's instruction could have allowed the jury to convict the defendant of robbery even if it concluded that the defendant acted only with knowledge of the robbery, but not with the intent to commit it. The defendant derives support for this claim by reference to one of the jury's queries to the court. As noted above, the jury asked the court if the "accused [would] be an accomplice if he were *aware* of any criminal act(s) only if he were made *aware* immediately after said acts were performed . . . ." (Emphasis added and omitted.) The defendant concedes that this claim was not preserved at trial. He asserts, however, that he is entitled to prevail under *State* v. *Golding,* supra, 239–40, and under the plain error doctrine as provided by Practice Book § 4185.[12]

"It is axiomatic that the state is required to prove all the essential elements of the crimes charged beyond a reasonable doubt in order to obtain a conviction. *In re Winship,* 397 U.S. 358, 361, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970)." (Internal quotations marks omitted.) *State* v. *Anderson,* supra, 36. The failure of the

---

[11] As noted in footnote 10, supra, to act intentionally it must be one's conscious objective to bring about a result or conduct. General Statutes § 53a-3 (11). To act knowingly requires only that one be aware of the circumstances. General Statutes § 53a-3 (12).

[12] Practice Book § 4185 provides that this court "shall not be bound to consider a claim unless it was distinctly raised at the trial or arose subsequent to the trial. The supreme court may in the interests of justice notice plain error not brought to the attention to the trial court."

trial court accurately to inform the jury of the elements of a charged offense "is error because it deprives the defendant of the right to have the jury told what crimes he is actually being tried for and what the essential elements of those crimes are." (Internal quotation marks omitted.) Id., 37. In determining whether the trial court's instructions were adequate, we view the jury charge as a whole "to determine whether it is reasonably possible that the instruction misled the jury." *State* v. *Ortiz,* 217 Conn. 648, 667, 588 A.2d 127 (1991).

Viewing the charge as a whole, we conclude that there is no reasonable possibility that the jury was misled. The court, initially, accurately defined intentional conduct pursuant to § 53a-3 (11). The court then explained that intentional conduct was "purposeful" conduct. Had the court instructed only that intentional conduct was "purposeful" conduct, as distinguished from accidental or inadvertent conduct, we might be persuaded that it was reasonably possible that the jury was misled. The court, however, also gave an accurate instruction as to the statutory definition of intent. Within the context of the entire instruction we conclude that the comparison to accidental or inadvertent conduct was not violative of due process.[13] The defendant, consequently, has failed to satisfy the third prong of *State* v. *Golding,* supra. The defendant may not prevail under the plain error doctrine because the challenged segment of the trial court's instructions does not impair the public confidence in or the fairness and integrity of the judicial process. *State* v. *Jeffrey,* 220 Conn. 698, 715, 601 A.2d 993 (1991), cert. denied, U.S.     , 112 S. Ct. 3041, 120 L. Ed. 2d 909 (1992).

---

[13] Although the jury used the word "aware" in its note to the trial court, the substance of the note was directed toward an entirely different question of law; see part I, supra; and thus we do not find it particularly indicative of any misperception on the part of the jury regarding the element of intent.

### III

Finally, the defendant claims that the jury was improperly instructed on the intent element of robbery in the first degree as an accessory. He asserts that the trial court improperly failed to instruct the jury that, in order to convict the defendant of robbery in the first degree as an accessory, it must find proven beyond a reasonable doubt that he was aware that one of the other participants in the crime was armed with a deadly weapon. We do not agree.

In its jury instructions regarding the intent element of the crime of robbery in the first degree as an accessory, the trial court charged that the state must prove that the defendant had intended to commit larceny. The court then accurately informed the jury of the elements and specific intent required for larceny. The court instructed further that the state would be required to prove, in order to obtain a conviction, that, in committing the larceny, the defendant intended that immediate physical force be used or threatened to be used upon another for the purpose of: (1) preventing or overcoming resistance to the taking of property or to the retention thereof immediately after the taking; or (2) compelling the owner to deliver up the property or to engage in other conduct which aids in the commission of the larceny. Although the defendant was charged with having committed first degree robbery in that a participant in the robbery had been armed with a deadly weapon; General Statutes § 53a-134 (a) (2); the trial court did not instruct the jury that, in order to convict the defendant of that crime, it was required to find proven beyond a reasonable doubt that the defendant had intended that one of the participants be armed with a deadly weapon. It is on that basis that the defendant claims that he was deprived of due process.

The essence of the defendant's claim is that, to be liable as an accessory to a crime, one must act "with the mental state required for commission of" the crime; General Statutes § 53a-8; and that the intent required for commission of the crime of robbery in the first degree includes the intent that a participant in the robbery be armed with a deadly weapon. The defendant concedes that this identical claim was unsuccessfully argued by the defendant in *State* v. *McCalpine,* 190 Conn. 822, 831–33, 463 A.2d 545 (1983). In *McCalpine* we stated that "[i]ntent was not an element of the *aggravating circumstance* provided by [§ 53a-134 (a) (2)] . . . ." (Emphasis added.) *State* v. *Crosswell,* 223 Conn. 243, 258 n.11, 612 A.2d 1174 (1992). Although the defendant recognizes the existence of *McCalpine,* he asserts that its precedential force has been eroded. We do not agree. As we recently stated, the cases subsequent to *McCalpine* do not conflict with *McCalpine's* holding "that when a defendant is charged with robbery in the first degree on the basis that 'he or another participant in the crime . . . is armed with a deadly weapon'; General Statutes § 53a-134 (a) (2); the defendant need not be proven to have intended to possess a deadly weapon. The concurrence in *McCalpine* also disagreed with that proposition, but it has not been questioned in any decision by this court." *State* v. *Crosswell,* supra, 261 n.14. Accordingly, we conclude that the trial court's instructions were accurate.

The judgment is affirmed.

In this opinion the other justices concurred.