STATE OF CONNECTICUT *v.* KENNETH LEMOINE, JR.
(14957)

PETERS, C. J., and CALLAHAN, BERDON, NORCOTT and KATZ, Js.

Argued March 15--decision released June 13, 1995

*Marjorie Allen Dauster*, assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's attorney, *Maxine Wilesky*, assistant state's attorney, and *Trisha Morris*, law student intern, for the appellant (state).

*Paul T. Edwards*, special public defender, for the appellee (defendant).

CALLAHAN, J. The dispositive issue in this certified appeal is whether the trial court, in its jury instructions in a criminal trial, has a constitutional obligation to refer to the evidence relating to the crimes charged in the information. The defendant, Kenneth Lemoine, appealed to the Appellate Court from judgments of conviction, rendered after a jury trial, of sexual assault in the third degree in violation of General Statutes § 53a-72a (a) (1) (B),[1] risk of injury to a child in violation of General Statutes § 53-21,[2] and two counts of assault of a peace officer in violation of General Statutes (Rev. to 1991) § 53a-167c (a) (1).[3] The Appellate

---

[1] General Statutes § 53a-72a provides in relevant part: "SEXUAL ASSAULT IN THE THIRD DEGREE: CLASS D FELONY. (a) A person is guilty of sexual assault in the third degree when such person (1) compels another person to submit to sexual contact . . . (B) by the threat of use of force against such other person or against a third person, which reasonably causes such other person to fear physical injury to himself or herself or a third person . . . ."

[2] General Statutes § 53-21 provides: "INJURY OR RISK OF INJURY TO, OR IMPAIRING MORALS OF, CHILDREN. Any person who wilfully or unlawfully causes or permits any child under the age of sixteen years to be placed in such a situation that its life or limb is endangered, or its health is likely to be injured, or its morals likely to be impaired, or does any act likely to impair the health or morals of any such child, shall be fined not more than five hundred dollars or imprisoned not more than ten years or both."

[3] General Statutes (Rev. to 1991) § 53a-167c provides in relevant part: "ASSAULT OF A PEACE OFFICER, FIREMAN, EMPLOYEE OF AN EMERGENCY MEDICAL SERVICE ORGANIZATION OR DEPARTMENT OF CORRECTION EMPLOYEE: CLASS C FELONY. (a) A person is guilty of assault of a peace officer, fireman, employee of an emergency medical service organization or employee of the department of correction when, with intent to prevent a reasonably identifiable peace officer, fireman or employee of an emer-

Court reversed the defendant's convictions and ordered a new trial. *State* v. *Lemoine*, 33 Conn. App. 743, 754, 641 A.2d 131 (1994).[4] The Appellate Court determined that the trial court's jury instructions had been constitutionally deficient because the court had failed sufficiently to relate the evidence elicited at trial to the various charges contained in the information, thereby denying the defendant his right to due process of law as guaranteed by the fourteenth amendment to the United States constitution and article first, § 8, of the Connecticut constitution. Id., 749–54. We granted the state's petition for certification to appeal. *State* v. *Lemoine*, 230 Conn. 909, 644 A.2d 920 (1994).[5] We reverse the judgment of the Appellate Court.

By way of background, the Appellate Court determined that the jury reasonably could have found the following facts. "On June 20, 1991, the victim, his mother, the defendant, Barbara Tirado and her daughter went to a lake. The victim was eight years old at the time. After staying at the lake, they drove to the

gency medical service organization, as defined in section 53a-3, or employee of the department of correction from performing his duty, and while such peace officer, fireman or employee is acting in the performance of his duties, (1) he causes physical injury to such peace officer, fireman or employee . . . ."

[4] On appeal to the Appellate Court, the defendant claimed that the trial court improperly "(1) denied his motions for a directed verdict and judgment of acquittal on the count of sexual assault in the third degree, (2) instructed the jury by failing to relate the issues of law to the facts of the case, and (3) instructed the jury on the crime of risk of injury to a child." *State* v. *Lemoine*, supra, 33 Conn. App. 744. Because the Appellate Court agreed with the defendant's second claim, it did not reach the defendant's first and third claims.

[5] We granted certification to appeal limited to the following issues: "(1) Did the Appellate Court properly conclude that the trial court had a constitutional obligation to refer to the facts relating to each charge of its jury instructions?" and "(2) Did the Appellate Court correctly order a new trial because the trial court did not relate the facts to each crime charged?" *State* v. *Lemoine*, supra, 230 Conn. 909.

home of the defendant's mother, then to the home of his sister and then to Tirado's home located on Maple Street in Meriden. The victim's father later joined the group and the adults all began drinking. The victim fell asleep on the couch in Tirado's home wearing his pants, shirt and underpants. The victim's father was asleep on a chair near the couch and the victim's mother was asleep in another room. The victim awoke to find the defendant placing his hands between the victim's legs on the outside of the victim's pants. The defendant was attempting to pull down the victim's pants. The defendant was behind the victim on the couch and the victim was facing away from the defendant. The defendant told him to be quiet. The victim took off his pants while the defendant continued to touch the outside of the underpants between the legs and then the defendant cut the victim's underpants. The victim was scared and ran to his mother's room and told her what had just occurred.

"The victim's mother ran into the living room to wake the victim's father. In the meantime, the defendant, who was wearing only a tee shirt, ran down the stairs and out the backdoor. Tirado caught the defendant outside and asked him 'why he did it' and the defendant responded that he was sorry and the drugs made him do it. Tirado brought the defendant back upstairs. The victim's father and the defendant then fought while the victim's mother took off the victim's underpants and dressed him.[6] The victim then went downstairs with his parents and got into a van. The victim's father began to drive on Main Street in Meriden to the police station when he observed the defendant driving a truck with Tirado as a passenger on Maple Street. The victim's father blocked the defendant's vehicle and the two

[6] "The victim testified that his underwear was left in Tirado's bedroom. The victim's mother testified that she did not remember where the underwear was left." *State* v. *Lemoine,* supra, 33 Conn. App. 745 n.5.

vehicles collided. The victim and his mother exited the van and proceeded to the side of the road.

"Officers Michael Merrigan, Mark Masse and Grant Treiber of the Meriden police department arrived at the scene in uniform shortly thereafter. Merrigan approached the father and was informed by him about the events that occurred at Tirado's home. Masse and Treiber approached the defendant's vehicle and asked him to exit it. As they attempted to open the door of the defendant's vehicle and take the keys, the defendant hit Treiber in the face and drove the vehicle in reverse. The officers at that point were hanging onto the doors of the vehicle. The truck veered to the right and almost hit a building on Maple Street. Treiber fell off the side of the truck and Masse hit a door attached to the building with sufficient force to break a hole in the door. Masse sustained lacerations to his right hand, right forearm, shoulder and back. Treiber sustained bruises and injured his right hand. Treiber then placed the defendant under arrest.

"At the crime scene, Robert Pocobello, a Meriden police detective, seized a pair of scissors and underpants. He discovered the scissors on a coffee table near the couch and the underpants on the couch. Pocobello processed the scissors for fingerprints. The processing revealed the presence of fingerprints that were not clear enough to be identified.

"Ted Standish, another Meriden police detective, employed by the department's sexual assault unit, interviewed the victim on June 21, 1991. The victim stated that after arriving at Tirado's home, she told him to sleep on the couch, where the defendant was already sleeping. The victim further told Standish that he awoke when the defendant placed his hands on the victim's 'dinky'[7] and that the defendant pulled at the

---

[7] "Standish testified that the victim pointed to his penis when he used the word 'dinky.'" *State* v. *Lemoine*, supra, 33 Conn. App. 747 n.6.

victim's pants. The victim also told Standish that the defendant told the victim to take off his pants and keep quiet. The victim then told Standish that the defendant tried to make him take off his underpants and when he refused, the defendant cut the underpants with scissors.

"The defendant disputed the facts. He testified on his own behalf that he, the victim, Tirado and the victim's mother arrived at Tirado's home after they had spent the day at the lake. The defendant also testified that he left Tirado's at 11 p.m., just after the victim's father arrived, returned at around 4:30 or 5 a.m., and found Tirado and the victim's father drinking and the victim asleep on the couch. The defendant also stated that he fell asleep on the couch, 'opposite the victim' and awoke to find the victim's father with his hand in the pocket of the defendant's pants, which the defendant had on, and thought that the victim's father was attempting to steal money. The defendant then testified that he tried to get up and that the victim's father jumped on him and hit him in the face. The defendant then testified that Tirado offered to drive him to the hospital and that he accepted Tirado's offer. He further testified that as Tirado drove him to the hospital, the victim's father forced their vehicle to a stop on Maple Street. The defendant then testified that he moved into the driver's seat, placed the truck in reverse and police officers tried to grab him, causing the truck to move in reverse." *State* v. *Lemoine*, supra, 33 Conn. App. 744–47.

After considering the defendant's claim that the trial court had failed to make sufficient reference to the evidence in its jury instructions, the Appellate Court concluded that "a complete lack of facts in the jury charge creates a reasonable possibility, as a matter of law, that the jury was misled." Id., 753–54. On appeal to this

court, the state claims that the Appellate Court incorrectly concluded that reference to the evidence in the trial court's jury charge was constitutionally mandated. The state argues that the Appellate Court's decision improperly created a per se rule that a jury charge given without a detailed reference to the evidence constitutes, as a matter of law, a constitutional due process violation and reversible error. See id.

"In reviewing a constitutional challenge to the trial court's instructions, we must consider the jury charge as a whole to determine whether it is reasonably possible that the instruction misled the jury. *State* v. *Avila*, 223 Conn. 595, 607, 613 A.2d 731 (1992); *State* v. *Santangelo*, [205 Conn. 578, 595 n.11, 534 A.2d 1175 (1987)]; *State* v. *Ruiz*, 171 Conn. 264, 273, 368 A.2d 222 (1976). The test is whether the charge as a whole presents the case to the jury so that no injustice will result. . . . *State* v. *Utz*, 201 Conn. 190, 196–97, 513 A.2d 1191 (1986)." (Internal quotation marks omitted.) *State* v. *Campbell*, 225 Conn. 650, 661, 626 A.2d 287 (1993). We will reverse a conviction only if, " 'in the context of the whole, there is a reasonable possibility that the jury was misled in reaching its verdict.' " *State* v. *Scognamiglio*, 202 Conn. 18, 28, 519 A.2d 607 (1987); *State* v. *Shannon*, 212 Conn. 387, 408, 563 A.2d 646, cert. denied, 493 U.S. 980, 110 S. Ct. 510, 107 L. Ed. 2d 512 (1989); *State* v. *Fleming*, 198 Conn. 255, 268–69, 502 A.2d 886, cert. denied, 475 U.S. 1143, 106 S. Ct. 1797, 90 L. Ed. 2d 342 (1986).

"A jury instruction is constitutionally adequate if it provides the jurors with a clear understanding of the elements of the crime charged, and affords them proper guidance for their determination of whether those elements were present. . . . *State* v. *Usry*, 205 Conn. 298, 316, 533 A.2d 212 (1987); *State* v. *Sinclair*, 197 Conn. 574, 581, 500 A.2d 539 (1985); see *State* v. *Wood*, 208 Conn. 125, 132, 545 A.2d 1026, cert. denied, 488

U.S. 895, 109 S. Ct. 235, 102 L. Ed. 2d 225 (1988). An instruction that fails to satisfy these requirements would violate the defendant's right to due process of law as guaranteed by the fourteenth amendment to the United States constitution and article first, § 8, of the Connecticut constitution. *State* v. *Anderson*, 212 Conn. 31, 36, 561 A.2d 897 (1989); *State* v. *Foster*, 202 Conn. 520, 537, 522 A.2d 277 (1987); *State* v. *Fleming*, [supra, 198 Conn. 269–70].'' (Internal quotation marks omitted.) *State* v. *Avila*, supra, 223 Conn. 602–603.

''The test of a charge is whether it is correct in law, adapted to the issues and sufficient for the guidance of the jury. *Berniere* v. *Kripps*, 157 Conn. 356, 358, 254 A.2d 496 (1969); *State* v. *Bell*, 153 Conn. 540, 219 A.2d 218 (1966) . . . . The primary purpose of the charge is to assist the jury in applying the law correctly to the facts which they might find to be established. *Vita* v. *McLaughlin*, 158 Conn. 75, 77, 225 A.2d 848 (1969); *Worden* v. *Francis*, 153 Conn. 578, 579, 219 A.2d 442 (1966).'' (Citation omitted.) *State* v. *Sumner*, 178 Conn. 163, 170, 422 A.2d 299 (1979). '' 'The purpose of a charge is to call the attention of the members of the jury, unfamiliar with legal distinctions, to whatever is necessary and proper to guide them to a right decision in a particular case.' '' *Shea* v. *Tousignant*, 172 Conn. 54, 59–60, 372 A.2d 151 (1976).

It has long been established that ''[i]n properly instructing the jury it *may or may not* be necessary for the court to recall the attention of the jury to the evidence and to the facts which the State and the accused respectively claim to have established, or to comment upon the evidence or express an opinion as to its weight, or as to what verdict would be proper if the jury should find certain facts to have been proved. The charge should be so framed that the jury may clearly understand the matters which are submitted to them. . . . It is within the province, and may be within the duty,

of the trial judge to not only call attention to the evidence adduced, but to state to the jury in the charge 'his own opinion of the nature, bearing and force of such evidence.' . . . It is not necessarily error to omit *all* comment upon the bearing and weight of evidence; and generally the extent to which the court should discuss the evidence in submitting a case to the jury is, so long as in criminal cases the jury [is] not directed 'how to find [its] verdict,' *within the discretion of the trial judge.*" (Citations omitted; emphasis added.) *State* v. *Long,* 72 Conn. 39, 43, 43 A. 493 (1899).

In reviewing whether the trial court *must* comment on any evidence that has been presented, we examine not only the entire jury charge, but also the presentation of the issues to the jury by counsel in the context of the trial. "Within constitutional limitations concerning trial by jury, the nature and extent of the trial court's comments on the evidence must largely depend on the facts involved in a particular case and the manner in which it has been tried. *Anderson & McPadden, Inc.* v. *Tunucci,* [167 Conn. 584, 590, 356 A.2d 873 (1975)]; *Quednau* v. *Langrish,* 144 Conn. 706, 710, 137 A.2d 544 (1957). . . . The *wide discretion* a trial court has in its comments on the evidence may not require it to discuss particular items of testimony, particularly where issues were clearly delineated during the trial, where the arguments of counsel fairly presented the case and where there was no request to charge. *Gosselin* v. *Perry,* [166 Conn. 152, 165, 348 A.2d 623 (1974)]; *Quednau* v. *Langrish,* supra, 710." (Emphasis added.) *Bruneau* v. *Quick,* 187 Conn. 617, 628–29, 447 A.2d 742 (1982).[8] In a case where the trial court's charge "contained no review of the evidence," we stated that

[8] The defendant failed to file a request to charge in the trial court and no exception was taken to the trial court's instructions. The Appellate Court reviewed this claim pursuant to *State* v. *Golding,* 213 Conn. 233, 239–40, 567 A.2d 823 (1989). See *State* v. *Lemoine,* supra, 33 Conn. App. 748A–48B.

"[t]he issues were narrow, and the court made sufficient reference to them and to the claims of the parties adequately to guide the jury in the application of the principles of law to the facts involved." *Corrievau* v. *Associated Realty Corp.*, 122 Conn. 253, 256–57, 188 A. 436 (1936); *Crane* v. *Hartford-Connecticut Trust Co.*, 111 Conn. 313, 316, 149 A. 782 (1930); *Morosini* v. *Davis,* 110 Conn. 358, 363–64, 148 A. 371 (1930); see also W. Maltbie, Connecticut Appellate Procedure (1957) § 88.

In the present case, the Appellate Court determined, contrary to the long established rule that comment on the evidence should be left to the discretion of the trial court, that the trial court has a constitutional obligation to comment on the evidence in its jury charge in a criminal trial, regardless of the complexity of the issues involved. We conclude, however, that review of or comment on the evidence is not constitutionally mandated where the trial court, in the exercise of its sound discretion, determines that such commentary is not necessary and that the jury would be properly instructed and not misled in its absence.

The defendant was charged in an information with nine counts. He was charged with sexual assault in the third degree in violation of § 53a-72a (a) (1) (A),[9] sexual assault in the third degree in violation of § 53a-72a (a) (1) (B)[10] and risk of injury to a child in violation of § 53-21,[11] all of which charges related to the minor victim. He also was charged with two counts of assault of a peace officer in violation of

---

[9] General Statutes § 53a-72a (a) provides in relevant part: "A person is guilty of sexual assault in the third degree when such person (1) compels another person to submit to sexual contact (A) by the use of force against such other person or a third person . . . ."

[10] See footnote 1.

[11] See footnote 2.

§ 53a-167c (a) (1),[12] and two counts of criminal attempt to commit assault in the first degree in violation of General Statutes §§ 53a-59 (a) (1) and 53a-49 (a) (2),[13] which counts related to the two police officers, and two counts of reckless endangerment in the first degree in violation of General Statutes § 53a-63,[14] one of which related to the minor victim's father and the other to Tirado.

After the close of evidence and immediately after the final arguments of counsel, the trial court instructed the jury as to the law applicable to all of the charges against the defendant. The court first instructed the jury on the general principles of law applicable to the case, such as reasonable doubt, direct evidence, circumstantial evidence and other principles typically contained in all criminal jury instructions. The court then instructed the jury accurately as to the elements the state must prove as to each crime charged in the information in order to convict the defendant.

Contrary to the arguments of the defendant and the decision of the Appellate Court; *State* v. *Lemoine*, supra, 33 Conn. App. 753; we conclude that, in its charge to the jury, the trial court, under the circum-

---

[12] See footnote 3.

[13] General Statutes § 53a-59 (a) provides in relevant part: "A person is guilty of assault in the first degree when: (1) With intent to cause serious physical injury to another person, he causes such injury to such person or to a third person by means of a deadly weapon or a dangerous instrument . . . ."

General Statutes § 53a-49 (a) provides in relevant part: "A person is guilty of an attempt to commit a crime if, acting with the kind of mental state required for commission of the crime, he . . . (2) intentionally does or omits to do anything which, under the circumstances as he believes them to be, is an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime."

[14] General Statutes § 53a-63 (a) provides: "A person is guilty of reckless endangerment in the first degree when, with extreme indifference to human life, he recklessly engages in conduct which creates a risk of serious physical injury to another person."

stances, was not constitutionally obligated to recite the evidence and relate it to the various charges against the defendant. We are not persuaded that it was reasonably possible that the jury was misled by its failure to do so. The court did emphasize in its instructions to which victims the various charges against the defendant applied. Moreover, the information, which the jury had with it during its deliberations, clearly stated to which victim each of the nine counts pertained.

Furthermore, it is clear from the record that the various counts pertained to three different episodes and it is impossible that the jury could have intermingled or confused the evidence concerning them. In short, the matching of the various counts to the victims and the accurate recitation by the court of the elements of the several crimes charged was, under the circumstances, a sufficient allusion to the evidence to furnish the jury with a practical guide as to how to apply the law.[15] See *State* v. *Storlazzi*, 191 Conn. 453, 467, 464 A.2d 829 (1983); *Shea* v. *Tousignant*, supra, 172 Conn. 60.

In arriving at its decision, the Appellate Court determined that "[b]ecause the trial court's charge was devoid of any reference to the facts of the case, except a passing reference to the names of the victims in four counts, we need not determine whether the issues in the case are complicated." *State* v. *Lemoine*, supra, 33 Conn. App. 753.[16] In assessing whether a jury reason-

---

[15] The defendant, in fact, was acquitted of the charges involving criminal attempt to commit assault in the first degree and reckless endangerment in the first degree, as well as the first count charging the defendant with sexual assault in the third degree in violation of § 53a-72a (a) (1) (A).

[16] The court cited *Amato* v. *Sawicki*, 159 Conn. 490, 494, 271 A.2d 80 (1970), for this proposition. In *Amato* we stated that the "issues were not complicated, and the recital of the essential facts and the instructions on each of the applicable specifications of negligence were adequate." Id. The Appellate Court seems to have construed the language in *Amato* so broadly as to conclude that in every case, no matter how uncomplicated, an instruc-

ably could have been misled by the court's instructions, however, it is always proper to consider whether the issues in the case are complicated. "The primary purpose of the charge is to assist the jury in applying the law correctly to the facts which they might find to be established. *Vita* v. *McLaughlin*, [supra, 158 Conn. 77]; *Worden* v. *Francis*, [supra, 153 Conn. 579–80]. The extent to which a court should comment on the evidence is largely a matter within its sound discretion. *Worden* v. *Francis*, supra, 580; *Morosini* v. *Davis*, [supra, 110 Conn. 363]. In some cases, where the issues are complicated, peculiar, or capable of differing conclusions, comment by the court is necessary. On the other hand, if the issues are clearly enumerated and the argument of counsel has fairly presented the case, a discussion in the charge of the details of the evidence may defeat its proper purpose. *Corrievau* v. *Associated Realty Corporation*, [supra, 122 Conn. 256]; *Heslin* v. *Malone*, 116 Conn. 471, 478, 165 A. 594 [1933]." *Tough* v. *Ives*, 162 Conn. 274, 287, 294 A.2d 67 (1972).

In the present appeal, although the defendant was charged with nine separate counts in the information, the evidence related to those charges was not complicated and the charges arose from three separate and distinct incidents. The first three counts against the defendant all related to the minor victim and concerned

tion relating the evidence to the law is always necessary no matter how obvious the relationship. Our conclusion in that case, however, did not so hold, but was derived from the proper test, which states that "[t]he portions of the charge under attack were adapted to the issues, correct in law and sufficient for the guidance of the jury." Id.

Similarly, in *State* v. *Lee*, 32 Conn. App. 84, 104, 628 A.2d 1318, cert. denied, 227 Conn. 924, 632 A.2d 702 (1993), cert. denied, 510 U.S. 1202, 114 S. Ct. 1319, 127 L. Ed. 2d 668 (1994), the Appellate Court stated: "The trial court has not only the right but also the duty to comment on the evidence." That statement is only true, however, when, in its discretion, the trial court determines that the issues are "complicated, peculiar, or capable of differing conclusions . . . ." *Tough* v. *Ives*, 162 Conn. 274, 287, 294 A.2d 67 (1972).

the incident involving sexual conduct at Tirado's apartment. The two counts of reckless endangerment arose from the collision of the defendant's truck with the victim's father's van at the corner of Maple Street and Main Street in Meriden. The assault counts involved only the police officers. The three incidents were not similar. Moreover, the final arguments of counsel, delivered immediately prior to the court's instructions, thoroughly reviewed the testimony elicited from the witnesses. Final arguments further focused on the *credibility* of the witnesses' factual accounts of the events that had occurred, not on whether the elements of the crimes charged were present if the state's witnesses were believed. The trial court, in the exercise of its judgment under the circumstances, might well have determined that review of or comment on the evidence was unnecessary and even might have been harmful. We cannot say that the trial court was wrong.

We conclude that the court's jury instructions, when examined as a whole and in the context of the entire trial, achieved their purpose of assisting the jury in applying the law. See *State* v. *Sumner*, supra, 178 Conn. 170–71. We conclude that, under the circumstances, the trial court did not abuse its discretion, when instructing the jury, in keeping its mention of the evidence to a minimum. We also conclude that it was not reasonably possible that the jury was misled by the trial court's instructions and that no injustice to the defendant resulted by reason of the court's instructions. See *Amato* v. *Sawicki*, 159 Conn. 490, 494, 271 A.2d 80 (1970). There was, therefore, no due process violation under either the state or the federal constitution.

The judgment of the Appellate Court is reversed and the case is remanded to that court for consideration of the defendant's remaining claims on appeal.

In this opinion the other justices concurred.