## STATE OF CONNECTICUT *v.* KENNETH LEMOINE, JR.
### (11701)

Dupont, C. J., Landau and Heiman, Js.

Argued January 14—decision released March 15, 1994

*Paul T. Edwards,* special public defender, for the appellant (defendant).

*Marjorie Allen Dauster,* assistant state's attorney, with whom, on the brief, were *Michael Dearington,* state's attorney, and *Maxine Wilensky,* assistant state's attorney, for the appellee (state).

HEIMAN, J. The defendant appeals from the judgment of conviction, rendered after a jury trial, of sexual assault in the third degree in violation of General Statutes § 53a-72a (a) (1) (B),[1] risk of injury to a child in violation of General Statutes § 53-21,[2] and two counts of assault of a peace officer in violation of General Statutes § 53a-167c (a) (1).[3] On appeal, the defendant claims that the trial court improperly (1) denied his motions for a directed verdict and judgment of acquittal on the count of sexual assault in the third degree, (2) instructed the jury by failing to relate the issues of law to the facts of the case, and (3) instructed the jury on the crime of risk of injury to a child. Because we agree with the defendant's second claim, we reverse the judgment of the trial court.[4]

The jury could reasonably have found the following facts. On June 20, 1991, the victim, his mother, the

---

[1] General Statutes § 53a-72a (a) provides in pertinent part: "A person is guilty of sexual assault in the third degree when such person (1) compels another person to submit to sexual contact . . . (B) by the threat of use of force against such other person or against a third person, which reasonably causes such other person to fear physical injury to himself or herself or a third person . . . ."

[2] General Statutes § 53-21 provides: "Any person who wilfully or unlawfully causes or permits any child under the age of sixteen years to be placed in such a situation that its life or limb is endangered, or its health is likely to be injured, or its morals likely to be impaired, or does any act likely to impair the health or morals of any such child, shall be fined not more than five hundred dollars or imprisoned not more than ten years or both."

[3] General Statutes § 53a-167c (a) provides in pertinent part: "A person is guilty of assault of a peace officer, fireman, employee of an emergency medical service organization or employee of the department of correction when, with intent to prevent a reasonably identifiable peace officer, fireman or employee of an emergency medical service organization, as defined in section 53a-3, or employee of the department of correction from performing his duty, and while such peace officer, fireman or employee is acting in the performance of his duties, (1) he causes physical injury to such peace officer, fireman or employee . . . ."

[4] Because we agree with the defendant's second claim, we do not reach the defendant's third claim.

defendant, Barbara Tirado and her daughter went to a lake. The victim was eight years old at the time. After staying at the lake, they drove to the home of the defendant's mother, then to the home of his sister and then to Tirado's home located on Maple Street in Meriden. The victim's father later joined the group and the adults all began drinking. The victim fell asleep on the couch in Tirado's home wearing his pants, shirt and underpants. The victim's father was asleep on a chair near the couch and the victim's mother was asleep in another room. The victim awoke to find the defendant placing his hands between the victim's legs on the outside of the victim's pants. The defendant was attempting to pull down the victim's pants. The defendant was behind the victim on the couch and the victim was facing away from the defendant. The defendant told him to be quiet. The victim took off his pants while the defendant continued to touch the outside of the underpants between the legs and then the defendant cut the victim's underpants. The victim was scared and ran to his mother's room and told her what had just occurred.

The victim's mother ran into the living room to wake the victim's father. In the meantime, the defendant, who was wearing only a tee shirt, ran down the stairs and out the backdoor. Tirado caught the defendant outside and asked him "why he did it" and the defendant responded that he was sorry and the drugs made him do it. Tirado brought the defendant back upstairs. The victim's father and the defendant then fought while the victim's mother took off the victim's underpants and dressed him.[5] The victim then went downstairs with his parents and got into a van. The victim's father began to drive on Main Street in Meriden to the police station when he observed the defendant driving a truck

[5] The victim testified that his underwear was left in Tirado's bedroom. The victim's mother testified that she did not remember where the underwear was left.

with Tirado as a passenger on Maple Street. The victim's father blocked the defendant's vehicle and the two vehicles collided. The victim and his mother exited the van and proceeded to the side of the road.

Officers Michael Merrigan, Mark Masse and Grant Treiber of the Meriden police department arrived at the scene in uniform shortly thereafter. Merrigan approached the father and was informed by him about the events that occurred at Tirado's home. Masse and Treiber approached the defendant's vehicle and asked him to exit it. As they attempted to open the door of the defendant's vehicle and take the keys, the defendant hit Treiber in the face and drove the vehicle in reverse. The officers at that point were hanging onto the doors of the vehicle. The truck veered to the right and almost hit a building on Maple Street. Treiber fell off the side of the truck and Masse hit a door attached to the building with sufficient force to break a hole in the door. Masse sustained lacerations to his right hand, right forearm, shoulder and back. Treiber sustained bruises and injured his right hand. Treiber then placed the defendant under arrest.

At the crime scene, Robert Pocobello, a Meriden police detective, seized a pair of scissors and underpants. He discovered the scissors on a coffee table near the couch and the underpants on the couch. Pocobello processed the scissors for fingerprints. The processing revealed the presence of fingerprints that were not clear enough to be identified.

Ted Standish, another Meriden police detective, employed by the department's sexual assault unit, interviewed the victim on June 21, 1991. The victim stated that after arriving at Tirado's home, she told him to sleep on the couch, where the defendant was already sleeping. The victim further told Standish that he awoke when the defendant placed his hands on the

victim's "dinky"[6] and that the defendant pulled at the victim's pants. The victim also told Standish that the defendant told the victim to take off his pants and keep quiet. The victim then told Standish that the defendant tried to make him take off his underpants and when he refused, the defendant cut the underpants with scissors.

The defendant disputed the facts. He testified on his own behalf that he, the victim, Tirado and the victim's mother arrived at Tirado's home after they had spent the day at the lake. The defendant also testified that he left Tirado's at 11 p.m., just after the victim's father arrived, returned at around 4:30 or 5 a.m., and found Tirado and the victim's father drinking and the victim asleep on the couch. The defendant also stated that he fell asleep on the couch, "opposite the victim" and awoke to find the victim's father with his hand in the pocket of the defendant's pants, which the defendant had on, and thought that the victim's father was attempting to steal money. The defendant then testified that he tried to get up and that the victim's father jumped on him and hit him in the face. The defendant then testified that Tirado offered to drive him to the hospital and that he accepted Tirado's offer. He further testified that as Tirado drove him to the hospital, the victim's father forced their vehicle to a stop on Maple Street. The defendant then testified that he moved into the driver's seat, placed the truck in reverse and police officers tried to grab him, causing the truck to move in reverse.

I

The defendant first asserts that the trial court improperly denied his motions for directed verdict and

---

[6] Standish testified that the victim pointed to his penis when he used the word "dinky."

judgment of acquittal on the count of sexual assault in the third degree.[7] The defendant posits that the state failed to present sufficient evidence of the threat of use of force as discussed in *State* v. *Hufford,* 205 Conn. 386, 533 A.2d 866 (1987). We disagree.

"The record discloses that the defendant made a motion for judgment of acquittal at the close of the state's case pursuant to Practice Book § 884. The trial court denied this motion. The defendant then proceeded to offer evidence on his own behalf. Under the existing rules, when a defendant elects to put on evidence after a denial of his motion for judgment of acquittal at the end of the state's evidence, he is deemed to have waived his right to appellate review as to the sufficiency of the evidence at the completion of the state's case. *State* v. *Booker,* 28 Conn. App. 34, 41–42, 611 A.2d 878, cert. denied, 223 Conn. 919, 614 A.2d 826 (1992); *State* v. *Kari,* 26 Conn. App. 286, 291, 600 A.2d 1374 (1991), appeal dismissed, 222 Conn. 539, 608 A.2d 92 (1992).[8] Thus, the defendant's claim with regard to the sufficiency of the evidence at the completion of the state's case is not reviewable. *State* v. *Booker,* supra, 41." *State* v. *Wolff,* 29 Conn. App. 524, 527–28, 616 A.2d 1143 (1992). The defendant, however, is entitled to a review of the sufficiency of the evidence as presented in the entire case. *State* v. *Booker,* supra, 42.

---

[7] "Even though our resolution of this case on the issue of the jury charge would appear dispositive because the other issues are unlikely to arise in a retrial, we must address the sufficiency of the evidence claim since the defendant would be entitled to an acquittal of the charge on which he claims insufficient evidence if he prevails on this claim. *State* v. *Dunn,* 26 Conn. App. 114, 123, 598 A.2d 658 (1991)." *State* v. *Wolff,* 29 Conn. App. 524, 527 n.4, 616 A.2d 1143 (1992).

[8] "We previously recognized in *State* v. *Booker,* 28 Conn. App. 34, 42 n.8, 611 A.2d 878, cert. denied, 223 Conn. 919, 614 A.2d 826 (1992), that the Connecticut Supreme Court has acknowledged the criticism of the waiver rule and its possible implications regarding the constitutional rights of a

In *Hufford,* the defendant did not exert force to effect the sexual contact. "The complainant had been legally rendered immobile for transport to the hospital and the defendant had only to open her blouse and pants to commit the sexual assault." *State* v. *Hufford,* supra, 393. Here, the jury could have reasonably found from the evidence that the victim removed his pants after the defendant physically attempted to remove them forcibly and then the defendant cut the victim's underwear. "The force used or threatened to be used in the course of committing sexual assault in the . . . third [degree] is that necessary to compel the victim to engage in sexual intercourse or to submit to sexual contact. *State* v. *Rogers,* 198 Conn. 53, 62, 502 A.2d 360 (1985)." *State* v. *Jackson,* 30 Conn. App. 281, 289, 620 A.2d 168, cert. denied, 225 Conn. 916, 623 A.2d 1026 (1993). We conclude that the defendant's claim that the evidence was insufficient is without merit. We are satisfied that the evidence was sufficient to warrant the jury's returning a verdict of guilty. If the case had been submitted to the jury under proper instructions, the verdict of guilty of sexual assault in the third degree involving the victim would have been proper. See *State* v. *Wolff,* supra, 529.

## II

The defendant next claims that the trial court improperly instructed the jury by failing to relate the issues of law to the facts of the case. The defendant concedes that

criminal defendant. See, e.g., *State* v. *Simino,* 200 Conn. 113, 118 n.5, 509 A.2d 1039 (1986); *State* v. *Lizzi,* 199 Conn. 462, 464–65, 508 A.2d 16 (1986); *State* v. *Rutan,* 194 Conn. 438, 444, 479 A.2d 1209 (1984); *State* v. *Duhan,* 194 Conn. 347, 352, 481 A.2d 48 (1984). Since the waiver rule is still the existing law in this state, we apply it in this case." *State* v. *Wolff,* 29 Conn. App. 524, 527–28 n.5, 616 A.2d 1143 (1992); see *State* v. *Battista,* 31 Conn. App. 497, 502, 626 A.2d 769, cert. denied, 227 Conn. 907, 632 A.2d 694 (1993).

he failed to object to the jury charge. See Practice Book § 852.[9] The defendant nevertheless claims that he is entitled to review under the doctrine of *State* v. *Golding,* 213 Conn. 233, 239–40, 567 A.2d 823 (1989). We agree.

Certain additional facts are necessary for a proper resolution of this appeal. The defendant was charged with nine counts in the information. They included (1) sexual assault in the third degree in violation of General Statutes § 53a-72a (a) (1) (A),[10] which related to the victim, (2) sexual assault in the third degree in violation of General Statutes § 53a-72a (a) (1) (B),[11] which related to the victim, (3) risk of injury to a child in violation of General Statutes § 53-21,[12] which related to the victim, (4) two counts of assault of a police officer in violation of General Statutes § 53a-167c (a) (1),[13] each of which related to one of the police officers, (5) two counts of criminal attempt to commit assault in the first degree in violation of General Statutes § 53a-59 (a) (1) and General Statutes § 53a-49 (a) (2),[14] which related

[9] Practice Book § 852 provides: "The supreme court shall not be bound to consider error as to the giving of, or the failure to give, an instruction unless the matter is covered by a written request to charge or exception has been taken by the party appealing immediately after the charge is delivered. Counsel taking the exception shall state distinctly the matter objected to and the ground of objection. Upon request, opportunity shall be given to present the exception out of the hearing of the jury."

[10] General Statutes § 53a-72a (a) provides in pertinent part: "A person is guilty of sexual assault in the third degree when such person (1) compels another person to submit to sexual contact (A) by the use of force against such other person or a third person . . . ."

[11] See footnote 1.

[12] See footnote 2.

[13] See footnote 3.

[14] General Statutes § 53a-59 (a) provides in pertinent part: "A person is guilty of assault in the first degree when: (1) With intent to cause serious physical injury to another person, he causes such injury to such person or to a third person by means of a deadly weapon or a dangerous instrument . . . ."

General Statutes § 53a-49 (a) provides in pertinent part: "A person is guilty of an attempt to commit a crime if, acting with the kind of mental

to the two police officers, and (6) two counts of reckless endangerment in the first degree in violation of General Statutes § 53a-63,[15] one of which related to the victim's father and the other to Tirado. After the close of evidence and after the final arguments of counsel, the trial court instructed the jury as to the law applicable to the charges in this case. The trial court first instructed the jury on the general principles of law applicable to the case, such as reasonable doubt, direct evidence, circumstantial evidence and other areas applicable to all criminal jury instructions. The trial court then instructed the jury as to the specific elements of the crimes charged in the information and on the use of constancy of evidence testimony as that concept related to the sexual assault and risk of injury charges. During deliberations, the jury asked for a playback of some testimony and asked to have charges on three counts reread. The only facts to which the trial court referred during its charge to the jury or in its recharge were that one count of assault of a peace officer and criminal attempt to commit assault in the first degree applied to Masse while the second count of assault of a peace officer and criminal attempt to commit assault in the first degree pertained to Treiber, and that one count of reckless endangerment pertained to the victim's father while the second count pertained to Tirado.

The defendant asserts that the trial court's instructions were constitutionally deficient because they failed to relate the issues of law to the facts of the case, thereby denying the defendant his right to due process

state required for commission of the crime, he  . . .  (2) intentionally does or omits to do anything which, under the circumstances as he believes them to be, is an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime."

[15] General Statutes § 53a-63 (a) provides: "A person is guilty of reckless endangerment in the first degree when, with extreme indifference to human life, he recklessly engages in conduct which creates a risk of serious physical injury to another person."

of law as guaranteed by the fourteenth amendment to the constitution of the United States[16] and by article first, § 8, of the constitution of Connecticut.[17] As we have already indicated, this claim was not preserved before the trial court, but the defendant claims that it is, nonetheless, reviewable under *State* v. *Golding,* supra.

"Our standard of review in cases when the defendant claims that the instructions violate constitutional due process protections is whether the jury instructions were so deficient that it was reasonably possible that the jury was misled." *State* v. *Wolff,* supra, 530; *State* v. *Campbell,* 225 Conn. 650, 661, 626 A.2d 287 (1993). We will reverse a conviction only if, in the context of the whole charge, there is a "reasonable possibility that the jury was misled in reaching its verdict." *State* v. *Shannon,* 212 Conn. 387, 408, 563 A.2d 646, cert. denied, 493 U.S. 980, 110 S. Ct. 510, 107 L. Ed. 2d 512 (1989); *State* v. *Wolff,* supra, 531.

We are first called on to consider whether the trial court's instructions were so deficient as to implicate the defendant's constitutional right to a fair trial. A jury instruction conforms with constitutional requirements if it provides the jury with a "clear understanding of the elements of the crime[s] charged, and affords them proper guidance for their determination of whether those elements were present." (Internal quo-

---

[16] The fourteenth amendment to the United States constitution provides in part: "Section 1. All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

[17] Article first, § 8, of the Connecticut constitution provides in pertinent part: "No person shall be compelled to give evidence against himself, nor be deprived of life, liberty or property without due process of law."

tation marks omitted.) *State* v. *Avila,* 223 Conn. 595, 602, 613 A.2d 731 (1992); *State* v. *Plude,* 30 Conn. App. 527, 537, 621 A.2d 1342, cert. denied, 225 Conn. 923, 625 A.2d 824 (1993). "An instruction that fails to satisfy these requirements . . . violate[s] the defendant's right to due process of law as guaranteed by the fourteenth amendment to the United States constitution and article first, § 8, of the Connecticut constitution." *State* v. *Avila,* supra, 603; *State* v. *Wolff,* supra, 530. "The due process clause protects an accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *State* v. *Roque,* 190 Conn. 143, 157, 460 A.2d 26 (1983); *State* v. *Salz,* 226 Conn. 20, 28, 627 A.2d 862 (1993); *State* v. *Wolff,* supra. "If justice is to be done . . . it is of paramount importance that the court's instructions be clear, accurate, complete and comprehensible, particularly with respect to the essential elements of the alleged crime[s]. . . ." (Citations omitted; internal quotation marks omitted.) *State* v. *Roque,* supra; *State* v. *Wolff,* supra.

"[I]n reviewing jury instructions our task is also to view the charge itself as part of the whole trial. . . ." (Citation omitted; internal quotation marks omitted.) *State* v. *Roque,* supra; *State* v. *Wolff,* supra, 531. We note that the defendant did not file specific requests to charge with the trial court and no exception was taken to the trial court's failure to relate factual claims of the parties to the charge with respect to the elements of the crimes charged. Under these circumstances "we do not engage in a microscopic examination of the charge, dissecting it line by line, nor do we consider the challenged portions of the charge in isolation." *State* v. *Wolff,* supra. Instead, we examine the charge as a whole to determine whether the charge adequately guided the jury toward a proper resolution of the issues presented to it. *State* v. *Fleming,* 198 Conn. 255, 268,

502 A.2d 886, cert. denied, 475 U.S. 1143, 106 S. Ct. 1797, 90 L. Ed. 2d 342 (1986); *State* v. *Wolff,* supra. While "[j]ury instructions need not be exhaustive, perfect or technically accurate," they must be correct in law, adapted to the issues presented by the case and sufficient to guide the jury properly in reaching a verdict. (Internal quotation marks omitted.) *Preston* v. *Keith,* 217 Conn. 12, 17, 584 A.2d 439 (1991); *State* v. *Wolff,* supra.

When a trial court instructs the jury, it "has not only the right but also the duty to comment on the evidence." *State* v. *Lee,* 32 Conn. App. 84, 104, 628 A.2d 1318, cert. denied, 227 Conn. 924, 632 A.2d 702 (1993). "A charge cannot be given in the abstract without reference to the evidence sufficient to provide guidance to the jury in arriving at a just result." *State* v. *Wolff,* supra. It is the function of a jury charge to assist the jury in applying the legal principles set forth by the court to the facts that they may find to have been established by the evidence. Id.; see *Jacques* v. *Carter,* 2 Conn. App. 27, 33, 476 A.2d 621 (1984). The court's instructions must "go beyond a bare statement of accurate legal principles to the extent of indicating to the jury the application of those principles to the facts claimed to have been proven." *State* v. *Sumner,* 178 Conn. 163, 170–71, 422 A.2d 299 (1979); *State* v. *Wolff,* supra. The charge must be viewed in the context of the factual issues developed at trial. *State* v. *Kurvin,* 186 Conn. 555, 558, 442 A.2d 1327 (1983); *State* v. *Wolff,* supra. The trial court does not properly fulfill the role of giving proper jury instructions by simply laying down a series of general principles of law applicable to the case and then leaving it to the jury to apply them. *State* v. *Wolff,* supra, 531–32. Rather, it is the trial court's obligation to inform the jury what the law is as applicable to the facts of the case as claimed to have been proven by the parties. Id., 532.

"While the degree to which reference to the evidence may be called for lies largely in the discretion of the court . . . reference to the evidence is required sufficient to guide the [jurors] in their application of the stated law to the evidence before them." (Citation omitted; internal quotation marks omitted.) *Mack* v. *Clinch,* 166 Conn. 295, 297, 348 A.2d 669 (1974). If the issues presented to the jury are not complicated, the trial court must, at a minimum, refer to the essential facts surrounding each instruction. *Amato* v. *Sawicki,* 159 Conn. 490, 494, 271 A.2d 80 (1970). Further, the instruction must refer to the defendant's claims made in his defense. *Phoenix Mutual Life Ins. Co.* v. *Brenckman,* 148 Conn. 391, 397, 171 A.2d 194 (1961). If the issues are complicated, the trial court must refer to the details of the evidence presented. *State* v. *Wolff,* supra; *Jacques* v. *Carter,* supra, 34. Because the trial court's charge was devoid of any reference to the facts of the case, except a passing reference to the names of the victims in four counts, we need not determine whether the issues in the case are complicated. *Amato* v. *Sawicki,* supra.

Here, the charge failed to refer to any facts of the case, despite the nine count information involving five victims.[18] "Even if we were to assume that the court correctly stated the rules of law in the abstract, with no further instructions applying the rules to the particular facts of this case, such a charge could not adequately serve to guide the jury in a determination [of the guilt of the defendant] . . . . See *Vita* v. *McLaughlin,* 158 Conn. 75, 78, 255 A.2d 848 (1969). Thus, a complete lack of facts in the jury charge cre-

---

[18] We note that the defendant was acquitted of the charges involving criminal attempt to commit assault in the first degree and reckless endangerment in the first degree, as well as the first count charging him with sexual assault in the third degree.

ates a reasonable possibility, as a matter of law, that the jury was misled.[19]

The judgment is reversed and the case is remanded for a new trial on those charges of which the defendant was found guilty.

In this opinion the other judges concurred.

---

[19] Although we rely on civil cases for this proposition, the criminal context, where we are concerned with the liberty of our citizens, certainly requires the minimal protections afforded to parties in civil cases where there is no liberty concern. See generally *State* v. *Colon,* 32 Conn. App. 402, 406–407, 628 A.2d 1347, cert. granted, 227 Conn. 926, 632 A.2d 705 (1993).