[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The petitioner brings this petition for Habeas Corpus concerning his conviction on several charges in 1992. By amended petition dated November 2, 1998 the petitioner sets forth a number of grounds for the petition, in three specific counts. Count One — Ineffective Assistance of Trial Counsel. Count Two — Ineffective Assistance of Appellate Counsel. Count Three — Due Process of Law.
This Habeas Court will determine the third count of the complaint first, as a claim of actual innocence would result in setting aside the verdict, regardless of the viability of the counts of ineffective assistance of counsel.
 I Petitioner's claim that the conviction is in violation of due processof law.
The petitioner merges a number of claims within this count, all of which are directed at the trial itself, including claims of insufficient evidence, inadequate instructions by the court, and prosecutorial misconduct by the prosecutor in closing argument to the jury.
A. The petitioner's claim of insufficient evidence.
1. The petitioner was convicted of a violation of General Statutes § 53a-72a(a)(1)(b). The petitioner was found not guilty of a violation of subsection (A) of the statute which prohibits a person from compelling another to submit to sexual contact by use of force against such other person. The defendant was convicted of violation of subsection (B) of said statutes which prohibits a person from compelling another person "to submit to sexual contact . . . (B) by the threat of use of force against such other person or against a third person, which reasonably causes such person to fear physical injury to himself or herself or a third person, . . .". CT Page 7700
General Statutes § 53a-65, Definitions, paragraph (3) defines Sexual Contact as follows "(3) means contact with the intimate parts of a person not married to the actor for the purpose of sexual gratification of the actor . . ." Paragraph (8) defines intimate parts as follows "(8) intimate parts' means the genital area, groin, anus, inner things, buttocks or breasts."
The evidence available to the jury from the testimony of the victim may be succinctly summarized. (Descriptions of the victim's testimony are also set forth in the three decisions of the Appeals Courts pertaining to the case: State v. Lemoine, 233 Conn. 502; State v. Lemoine,33 Conn. App. 743; and 39 Conn. App. 657. There were no other eyewitnesses to the alleged event other than the petitioner, who disputed the allegation that any sexual contact took place.)
Review by this Habeas Court of the trial transcript reveals that the alleged victim testified as to the events of that day. He was nine years old at the time of trial in May 1992, having turned nine in September following the day of the alleged incident, which was June 21, 1991. Having gone swimming at a lake that day, in the company of his mother, her friend Barbara, her daughter and the petitioner, they returned to Barbara's house. The victim fell asleep on the couch in the living room. He did not remember whether anyone else was asleep at that time. He was wearing pants, a shirt and underwear.
At some point in the evening he woke up. He was awakened by the petitioner who had placed his hands between the victim's legs. The defendant was trying to take off the victim's pants by pulling on them. The defendant was on the inside of the couch, behind the victim and facing opposite from the victim. The defendant told him to be quiet. The victim took off his, the victim's pants. Then the defendant tried to cut off the victim's underwear. The victim felt the coldness of an object, thought to be a scissors, and which was being used to cut off his underwear and the defendant's hand was between his legs at the time. Transcript, 5/26/92 p. 185. The victim was scared and then ran to his mother's room. One of the persons who testified, Detective Standish, testified that the victim told him that he awoke when the defendant placed his hand on the victim's "dinky" which he pointed to as his penis.33 Conn. App. 746; 39 Conn. App. 662; 233 Conn. 507. Transcript 5/26/1992 p. 127. This testimony was admitted under the constancy of accusation exception. Whether the defendant touched the genitals of the victim is of course irrelevant in the context of this statute, for the area specifically recalled by the victim, the area between the legs, is also an "intimate part" as defined by General Statutes § 53a-65(8). CT Page 7701
A 2. The defendant's claim of insufficient evidence to support the conviction of violations of General Statutes § 53-72a(a)(1)(b).
The defendant claims that under the state of the evidence the plaintiff could not be found guilty of the violation of this statute. If that were to be the case this claim, for the purpose of habeas corpus would be a claim of "actual innocence", for it follows that a conviction based upon insufficient or inadequate evidence would be at law tantamount to "actual innocence." "The fundamental question is whether habeas corpus permits the granting of a new trial pursuant to a petitioner's claim of actual innocence, unadorned by an antecedent showing of a constitutional violation that affected the fairness of his criminal trial. We conclude that it does." Summerville v. Warden, 229 Conn. 397, 421 (1994).
Claims of "actual innocence" also known a "factual innocence" differ from claims of unreliable convictions based upon claims of an antecedent constitutional violation, such as ineffectiveness of counsel. SeeSummerville v. Warden, supra, p. 420.
Generally, matters which could have been presented on a direct appeal, and were not, are not to be entertained by the habeas court. See Johnsonv. Commissioner, 218 Conn. 403 (1991), applying both a "deliberate bypass" and a "cause and prejudice" rule. A claim of insufficient evidence is able to be presented on appeal, and hence may conceivably be barred by Johnson, supra. In the present case, State v. Lemoine, however, the Appellate Court did determine this issue. "We conclude that the defendant's claim that the evidence was insufficient is without merit. We are satisfied that the evidence was sufficient to warrant the jury's returning a verdict of guilty." State v. Lemoine, 33 Conn. App. 743,748 A (1994). That issue should not be relitigated. Summerville, supra p. 419, 420. Even if there had been no Appellate Court determination, and the issue had come to this habeas court initially, yet the conclusion of this court is and would be the same as that of the Appellate Court. The petitioner appears to dissect the activity testified to by the victim as if his, the petitioner's, activity consisted of a series of disjointed actions, claiming that the indecent touching had ceased at or prior to the cutting of the victim's underwear and/or his command of the victim to be quiet. The transcript does not support the petitioner's contention that the threat followed a ceasing of the improper conduct. The evidence supports the conclusion that the contact which was ongoing and was compelled by such threat. See Transcript 5/26/92 p. 85. A. "He cut them". Q. "Now, was his hands between your legs now?" A. "Yes."
Several recent Connecticut Supreme Court cases deal with claims of actual innocence in habeas cases. Both Miller v. Commissioner ofCorrections, 242 Conn. 745 (1997) and Summerville v. Warden, 229 Conn. 397
CT Page 7702 (1994), deal with circumstances whereby additional evidence was presented at the habeas trial to attempt to prove actual innocence. The present habeas trial before this court provided no additional testimony or other evidence as concerns the incident in question. Although our Supreme Court has not specifically imposed a requisite of new evidence, assuming "without deciding that a petitioner's claim must be based on `new evidence'" (See Miller, supra, footnote 29, p. 789) that question is academic in this case, as the Appellate Court decision, 33 Conn. App. 743,748 A, is clear and concise, and directly in accord with applicable law, and the habeas proceeding produced no new evidence to change or alter the decision of the Appellate Court.
The standard of proof for evaluating this claim, a "freestanding" claim of actual innocence, is two fold. "First, the petitioner must establish by clear and convincing evidence that, taking into account all of the evidence, both the evidence adduced at the original criminal trial and the evidence adduced at the habeas corpus trial, he is actually innocent of the crime of which he stands convicted. Second, the petitioner must also establish that, after considering all of that evidence and the inferences drawn therefrom . . . no reasonable factfinder would find the petitioner guilty of the crime." Miller v. Commissioner, supra, p. 747.
The conviction was based upon adequate evidence. The petitioner's claim of innocence by virtue of insufficient evidence cannot be sustained.
B. Failure to adequately instruct the jury on the element of compulsion.
A claim of failure to adequately instruct the jury on an element of the crime may be raised on direct appeal. See State v. Gabriel, 192 Conn. 405,415 to 425 (1984). It is arguable that the failure to raise this question in the appellate proceedings would preclude this habeas court's consideration, re Johnson v. Commissioner, supra. However this same question is raised by the petitioner in the habeas complaint, both as ineffective assistance of trial counsel and ineffective assistance of appellate counsel. Consequently this claim may be addressed as an antecedent constitutional violation. It has been consistently held by our appeals courts that claims of ineffective assistance of counsel is properly the function of habeas corpus rather than that of direct appeal.State v. Bailey, 32 Conn. App. 773, 785 (1993).
C. Claims of Prosecutorial Misconduct.
The petitioner claims that this subject falls into the category of what the law terms "actual innocence" because such conduct violates his right to due process of law. This claim is set forth in count three of the complaint and in Section IC of the petitioner's brief. Although it may be CT Page 7703 argued that the claim for the alleged antecedent constitutional violation could have been raised in a direct appeal, the claim is also set forth as ineffective assistance of counsel, and may be dealt with under the principles set forth in Strickland v. Washington, 466 U.S. 686 (1984).
II Claims of violation of the right to effective assistance of trialcounsel.
 Claims of ineffective assistance of counsel are the purview of habeas corpus. State v. Bailey, 32 Conn. App. 773. 785 (1993).
A. Claims of failure of trial counsel to request a jury instruction on the element of compulsion.
The petitioner contends that the trial court should have instructed the jury on the element of compulsion concerning § 53a-72a(a)(1), threat of use of force.
The Appellate Court has recently reiterated the standard of review applicable to claims of violation of the petitioner's constitutional right to effective assistance of counsel. "The standard to be applied by habeas courts in determining whether an attorney effectively represented a criminal defendant is set forth in Strickland v. Washington, 466 U.S. 668
(1984). The petitioner must prove both deficient performance and actual prejudice. Thus the petitioner must establish not only that his counsel's performance was deficient, but that as a result thereof he suffered actual prejudice, namely, `that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" . . . "In this context, a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different does not require that counsel's deficient conduct more likely than not altered the outcome in the case. Rather it merely requires the prisoner to establish a probability sufficient to undermine confidence in the outcome. If a reviewing court can dispose of an ineffectiveness of counsel claim on the ground of lack of prejudice, it need not review whether trial counsel's representation was, in fact, deficient." Rivera v. Commissioner of Correction, 61 Conn. App. 825,828, 829 (2001).
The petitioner claims that trial counsel's representation was deficient because he failed to request a jury instruction on the element of compulsion necessary to prove sexual assault in the third degree. Compulsion is of course an essential element of the crime, as is set forth in the statute, General Statutes § 53a-72a(a)(1). The petitioner claims in the complaint that trial counsel was ineffective in failing to "object to the misleading nexus between the elements of threat CT Page 7704 of use of force and the sexual contact." In the brief the petitioner refines this argument to focus on his claim that the court failed to adequately instruct the jury on the element of compulsion.
It is the law that the trial court must instruct on every essential element of the crime charged. State v. Andersen, 212 Conn. 31, 36, 37
(1989). However, this does not imply that the court is required to define words which have an ordinary meaning in the English language.
The court charged the jury in accordance with the clear verbiage of the statute. The court charged that "the state must prove each of the following elements beyond a reasonable doubt. (1) sexual contact had taken place and (2) the defendant compelled the victim to submit to such sexual contact either by use of force or threat of use of force which reasonably caused the victim to fear physical injury." (Transcript 6/4/92, p. 74) The court again charged the jury, upon the jury's request, as to the elements of the statute, using the criteria "compelled the victim to submit to such sexual contact by the use of force or by threat of use of force which reasonably caused the victim to fear physical injury." (Transcript 6/4/92, p. 102).
The petitioner takes the position that the court was required to instruct the jury that there should have been an explanation of the causal element of threat of use of force and "compelling" the victim to submit to sexual contact. That the court should have further defined "compel". The petitioner points to no precedent to support that position. The petitioner cites Connecticut Practice Series, Volume 5, Criminal Jury Instructions, See 10.5, Borden and Orland, to support that position. The cited section however states, in pertinent part: "The second element is that the defendant `compelled' the victim to submit to sexual contact by force, or by the threat of force which reasonably caused her to fear physical injury. Compelled means what it means in the ordinaryuse of language." It should be clear that where statutes use terms which have an ordinary use in the English language there is no need for the court to attempt to further define a commonly understood word. In the present case there is no reason to believe that the jury did not have an understanding of the word "compelled", bearing in mind that the jury had both sections of the statute read to it twice and did not ask for any further definition of the word "compelled". The jury asked a further question as concerns other charges, which was in accordance with the court's traditional invitation to pose further questions if the jury needed any further explanations. (Transcript 6/4/92, p. 94.)
This habeas court finds no merit to the petitioner's claim that the court should have further instructed the jury in the element of compulsion. Trial counsel was not ineffective in failing to request such CT Page 7705 a charge or to take exception to the court's charge on this subject.
A. Claim of failure of the trial counsel to understand or request proper application of constancy of accusation evidence.
(1) Preliminary considerations.
The petitioner first questions whether the victim told his father about what had happened. The transcript (Transcript 5/27, p. 51, 52, 53) demonstrates that the father followed the victim from the living room when the victim ran into the kitchen. The mother also met the child is in the kitchen and the victim told them that the petitioner had cut his underwear and was "trying to play with him, or had played with him in his private area." "Private area" the father took to mean his penis area. The petitioner's contention that the victim had not told the father what happened is unfounded.
The Connecticut Supreme Court has recently modified the permissible scope of evidence under the constancy of accusation rule. In State v.Kelly, 256 Conn. 23 (May 2001) the court stated "constancy of accusation witnesses in sexual assault cases would be confined to testify only regarding the fact that the victim complained to them, the time when the complaint was made, and the limited details of the assault" Kelly, supra (p. 36). These limitations are prospective, and would not apply to the case, tried prior to 1996 — i.e. prior to State v. Troupe,237 Conn. 284 (1996). Even if that limitation applied to the present case, the facts of the assault are not complex or extensive and the recitation by the constancy witness would be in compliance with a new "limited details" standard.
As concerns the testimony of the father and the mother, the testimony would probably have been available under the "excited utterance" exception to the hearsay rule. See State v. Kelly, supra, pp. 41, 42. Yet the evidence was not so offered and hence this decision is relegated to the rules pertaining to constancy of accusation.
Although the victim cannot remember if his father was in the kitchen with the mother, nor the specific names of the two officers who testified as to constancy, there is adequate evidence in the record that these witnesses, all of whom testified at trial, clearly remembered speaking with the victim, a young child, who related to them the details of this event. The child remembered talking to his mother and the two officers. The fact that he did not remember the names of the officers is understandable, and is of no consequence.
Trial counsel objected on the basis of hearsay. The objection was CT Page 7706 properly overruled on the basis of the constancy of accusation exception to the hearsay rule.
 (2) The petitioner takes the position that a contemporaneous limiting instruction is necessary when constancy of accusation evidence is introduced, and consequently counsel should have so requested.
There is no statutory requirement that the court give acontemporaneous limiting instruction to the jury, so as to contemporaneously instruct the jury that constancy testimony can only be used for corroboration purposes. Nor is there case law precedent or practice book requirement that this be done contemporaneously. It is certainly acceptable, though not required, for a court, in its discretion to give a contemporaneous instruction, as was done in State v. Bethea,24 Conn. App. 13, 21 (1991). It was not improper for counsel not to request a contemporaneous limiting instruction.
The court properly charged the jury as follows: "This evidence is admitted solely to corroborate his testimony in court. . .", after having instructed the jury that the evidence is offered "so to corroborate his testimony the state is permitted to prove that outside of court he made complaints of the injury done to him" (Transcript 6/3/92, p. 70).
It was not ineffective assistance of counsel to not request a charge, or to not object to the charge, when the court properly charged the jury as to the limited use of the constancy evidence. The jury is presumed to have followed the court's instructions. State v. Taylor, 63 Conn. App. 386,397 and footnote 11 (2001).
 (3) Claim that the charge was confusing as to corroboration and hence apparently a claim that trial counsel should have taken exception to the charge.
Petitioner claims that the following part of the charge was confusing to the jury as pertains to constancy of accusation.
"This evidence is admitted solely to corroborate his testimony in court and in determining the extent you will find such corroboration in their statements out of court you will consider carefully all circumstances under which they were made and particularly you should consider whether they have been constant and consistent in what they said." (Transcript 6/3/92, p. 70).
There were four constancy of accusation witnesses. Each of the victim's parents, Officer Merrigan and Detective Standish. It is clear in reading the charge that "they" refers to the statements of the victim as given to CT Page 7707 the constancy witnesses as concerns whether each of these several out of court statements, ("they"), were consistent with the victim's recollection of what happened. The jury asked no questions as to this part of the charge and there is nothing to conclude that this jury was confused.
This court finds no merit to the petitioner's claim that trial counsel should have sought clarification of this part of the charge.
III Claims of ineffective assistance of appellate counsel.
 Turning for the moment to several of the petitioner's claims of failure of appellate counsel to address issues which have heretofore been discussed in this memorandum of decision.
 A. It is claimed that appellate counsel's representation was below the standard in failing to challenge the sufficiency of the evidence of compulsion or the incomplete jury instruction on compulsion. This court has determined in part I A2 (insufficient evidence)and IB (compulsion) hereof that appellate counsel did address that subject, and that the Appellate Court determined that purported issue. State v. Lemoine, 33 Conn. App. 743, 748A (1994). This court finds no merit in a claim that appellate counsel should have sought Supreme Court certification. This court cannot see any probability that the outcome of the case would have been any different if certification was sought or granted.
 B. It is claimed that appellate counsel's representation was below standard in failing to challenge the admission and use of constancy of accusation evidence. As set forth in section II B of this decision both the admissibility of constancy of accusation evidence and the charge to the jury on this subject were proper and in accordance with applicable law. Hence the claim that failure to make this an issue for appeal is without merit.
IV Claims of Prosecutorial Misconduct by the prosecutor in the closingargument.
This claim is set forth in the complaint as allegation 8 g, h, and i of CT Page 7708 the first count of the complaint, "Ineffective Assistance of Trial Counsel". Paragraph 8 g alleges failure to object to the prosecutor's comments urging substantive reliance on constancy of accusation evidence. 8 h, claims failure to object to the use by the prosecution of matters which were not in evidence. 8 i, claims failure to object to the prosecutor's vouching for witnesses, and appeals to subjective beliefs and standards during arguments to the jury.
In counts two, ineffective assistance of appellate counsel, the petitioner claims that appellate counsel failed to raise a challenge to the claimed improprieties in the state's argument to the jury.
Counsel has chosen in the brief to discuss the claim under the actual innocence section and also in the appellate counsel section. As concerns claims directed to defense trial counsel they might, without deciding, be barred by Johnson v. Commissioner, 218 Conn. 403, supra, as they might possibly have been capable of a direct appeal, without needing further testimony. The substance of the argument, however, is properly before the court under claims directed to appellate counsel. Although the present claims of the petitioner concerning prosecutorial misconduct were not objected to by trial counsel, yet this issue was able to be raised on appeal under the doctrine of State v. Golding, 213 Conn. 233, as the record is adequate for review and the claim implicates the defendant's constitutional right to due process. See State v. Alexander,50 Conn. App. 242, 248, 249, 259 (1998). Hence this issue could probably have been raised by appellate counsel on appeal.
Defense counsel and obviously appellate counsel must be given leeway as to what matters are tactically wise to peruse, in that under Stricklandv. Washington, 466 U.S. 669, the Supreme Court recognizes or establishes a presumption that counsel's acts or omissions constitute reasonable tactical decisions. See Jenkins v. Commissioner of Corrections,52 Conn. App. 385, 395 (1999). Appellate counsel, testifying at the habeas trial, testified that he did not raise as error the closing arguments of the prosecutor. The reason given was that he "felt pretty comfortable with the second issue, I'll call it, and so that I wanted to be the primary emphasis and focus and not have a lot of other things in the brief to sort of bury that, and, secondly, again, I was concerned about the likelihood on the ability of being able to establish that there was any prejudice resulting from anything in the closing arguments." (Habeas transcript 1/5/2000, p. 93).
Bearing in mind that there were only three issues presented upon appeal the inclusion of this issue of prosecutorial misconduct would not have de-emphasized the other issues, and that the prosecutor's conduct was questionable in several ways, and that the inclusion of the issue could CT Page 7709 easily have been presented on the record, without de-emphasizing other issues, this court finds that failure to present this issue on appeal does not constitute a "reasonable tactical decision" under Strickland, supra. See also Jenkins v. Commissioner of Correction, supra p. 396 as pertains to habeas review of "tactical reasons."
It is noted that the Appellate Court in Jenkins heard an appeal from habeas, re prosecutorial misconduct concerning trial counsel, even though that issue had not been presented on appeal. At this habeas trial the trial counsel had no recollection of the prosecutor's argument, and does not recall if he had a tactical reason not to, or to, object. (Habeas transcript 1/5/2000, p. 56). This habeas court cannot discern a tactical reason for trial counsel's failure to object to some of the prosecutor's arguments, as is claimed by petitioner in his first count, paragraph 8 g, h, i, of the complaint.
B. 1 The standard to be applied as concerns prosecutorial misconduct is recently set forth by the Connecticut Supreme Court in State v. Alexander, 254 Conn. 290 (August 2000).
 "In order to demonstrate this, the defendant must establish that the trial as a whole was fundamentally unfair and that the misconduct so infected the trial with unfairness to make the conviction a denial of due process. When analyzing the constitutional due process claims of the criminal defendants alleging prosecutorial misconduct, one must not focus solely on the conduct of the prosecutor, but instead the fairness of the trial as a whole should be at the forefront of the inquiry."
 State v.Alexander, supra, p. 303.
Factors to be considered are the extent to which the defendant invited the conduct, the severity of the misconduct, the frequency of the misconduct, the centrality of the misconduct to the critical issues in the case, strengths of corrective measures and the strength of the state's case. See State v. Alexander, supra, p. 304.
B. Claim of comments on facts not evidence.
The prosecutor stated to the jury in closing argument "he layed on the couch with that young man, placed his arm over him so he could not escape . . ." (Transcript 6/3/92, p. 10). As is pointed out in the petitioner's brief there is no evidence either in direct testimony or even in the CT Page 7710 testimony of the constancy witnesses, that this placing of the arm and hence this restraint by use of force ever occurred.
"A prosecutor in fulfilling his duties must confine himself to the evidence in the record." State v. Alexander, supra, p. 306. It amounts to unsworn testimony, which not the subject of proper closing argument.Alexander, supra, p. 316. The court instructed the jury that "you may not go outside the evidence to find facts" (Transcript 6/3/92, p. 56), and that arguments and statements by the lawyers are not evidence. (p. 57). The prosecutor also reminded the jury at the beginning of closing arguments that it is for the jury to find facts and that the jury's memory controls, not hers. (Transcript 6/31/92, p. 6).
Of particular significance is the fact that the jury did not convict the petitioner of that portion of § 53a-72(a)(1)(A) which prohibits actual use of force, which arm force restraint would clearly have been, but rather convicted of threat of use of force. The petitioner has failed to demonstrate substantial prejudice caused by this comment, or that the result of the trial would have been different had the comment not been made.
C. Substantive comments by the prosecutor as to items of testimony of constancy of accusation witnesses which items were not testified to by the victim.
The prosecutor argued that the victim "pointed to the genital area. I believe he called it his dinky" in relating the events which occurred. The victim, however, was unable to recall a contact with his "dinky" (penis) one way or another, at the time of the trial. These statements as to "dinky" (penis) came from the constancy testimony of Detective Standish, and Officer Merrigan, relating that this is what the victim told them when they interviewed the victim after the alleged incident.
It certainly may be argued that when the prosecutor uses testimony admitted for corroboration purposes, where some factual matters have been stated which are in addition to the facts testified to by the victim, and argues these for substantive purposes, this is tantamount to commenting on facts not "in evidence." (Our Supreme Court has recently restricted the scope of "constancy" testimony to relating the fact that the victim complained to then, the time that the complaint was made and the limited details of the assault. State v. Kelly, 256 Conn. 23, 36 (2001). In some cases this may in the future insulate a jury from even hearing non-corroborative details, but the decision is not retroactive and will have to be applied on a case by case basis in the future.
This court determines that it was not proper for the prosecutor to CT Page 7711 refer to a touching of the "dinky" as if it was properly before the jury as substantive evidence. However there is no reason to believe that the jury disregarded the court's charge as to the limited use of corroborative testimony. It must further be borne in mind that, as defined in General Statutes § 53a-65 "intimate parts" means "inner thighs" and such touching, was clearly in evidence from the victim's own testimony.
There is no reason to believe that the prosecutor's arguing this constancy testimony as to "dinky" caused the jury to accept that argument, or that, if that had not occurred the result of the proceedings would have been different.
D. The petitioner also claims that the prosecutor. by attempting to assert matters which are the province of the jury acted improperly.
The prosecutor argued: "If someone produced a pair of scissors to you and cut your underwear off", as to the scissors, I think you would think that was force." . . . "I can't imagine that you would not believe it's force"; "ask yourself whether you would be scared . . .;" "would you not be afraid of physical injury?" (Transcript 6/3/92, p. 48; Transcript 6/3/92, p. 10).
Comments as to the psychology of persons or the psychological traits of children, without substantive evidence, are allied to commentary as to facts not in evidence, and are hence not proper. State v. Alexander, supra, p. 306. Similarly, asking adults to be introspective as to their own personal behavior in matters such as these, force and fear and the like, are not the same when applied to children. These are matters for the jury to deal with objectively from the evidence. There is however, nothing to indicate that the jury applied a subjective personal adult standard to the evidence to support findings of fear in this young victim, whose testimony adequately described that factor. Had the prosecutor's comments as to "you" not occurred there is no reason to believe that the outcome of this trial would be any different.
E. Claims that the prosecutor expressed a personal opinion as to thecredibility of witnesses.
The prosecutor did not state her personal opinion as to the credibility of the witnesses. There is a fine but distinct line between stating personal opinion as to the veracity of the evidence and arguing the strength of the evidence. "The mere use of words such as `I submit', `I find' or `I believe' does not constitute improper argument." "While a prosecutor may not interject personal opinions about the credibility or truthfulness of a witness, she may comment on the credibility of the CT Page 7712 witness so long as the comment reflects reasonable inferences from the evidence adduced at trial." Jenkins v. Commissioner of Correction,52 Conn. App. 385, 400, 401 (1999). A review of the transcript of closing argument does not demonstrate that the prosecutor advanced to the jury personal opinions as to the credibility of witnesses or the guilt of the defendant.
F. The claim that the prosecutor appealed to the emotions of the jury.
It appears that petitioner claims that the prosecutor appealed to the emotions of the jury by using their personal criteria for fear and force. This is not the type of appeal to emotion which is precluded as an improper appeal to emotion. A review of the transcript does not reveal that the prosecutor attempted to portray the petitioner as some form of ogre or the like, i.e. to brand him with epitaphs or the like. See Statev. Alexander, 254 Conn. 290, 307. The only reference which was made concerning the petitioner and the victim was that the petitioner is an adult who has the advantage of size over the victim in the context of use of force. This is a matter which is clear from the evidence itself as both persons were present and testified at the trial.
G. The court determines that comments by the prosecutor did not constitute improper appeals to emotion. There is certainly no reason to believe that had any questionable comments not been made the result of the trial would have been different. The fairness of the trial as a whole is clear and evident.
 V SUMMARY
1. As to the claims of actual innocence the petitioner has failed to demonstrate that he is innocent bearing in mind the evidence produced at the original trial, and no further substantive evidence before this court.
2. As concerns claims of ineffective assistance of trial counsel, and appellate counsel, the petitioner has failed to demonstrate that any of the claims made by him, even if proven, would have caused the result of the proceedings to have been different, or to undermine confidence in the outcome of the trial.
3. The petition for writ of habeas corpus is denied.
CT Page 7713 L. Paul Sullivan, J.